FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
6/9/2022 10:49 AM
KATHLEEN VIGIL CLERK OF THE COURT
Leticia Cunningham

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT


KATE FERLIC, as the Personal Representative of the
Wrongful Death Estate of ISAAC BREALEY-ROOD, a
deceased minor; CARISSA BREALEY, individually, and as
the Guardian and Next Friend of K.B.R., a minor; JAMES
ROOD, individually; and AIDAN BREALEY-ROOD,
individually,

     Plaintiffs,

                                    D-101-CV-2020-02496

     vs.                           Judge Maria Sanchez-Gagne

MESILLA VALLEY REGIONAL DISPATCH AUTHORITY;
DANIEL GUTIERREZ, DAVID WOODWARD, and QUINN
PATTERSON, individually and as Mesilla Valley Regional
Dispatch officers and employees; DONA ANA COUNTY
BOARD OF COUNTY COMMISSIONERS; ARTURO
HERRERA, individually and as Dona Ana County officer
and employee; ADRIAN HERRERA, individually and as Dona
Ana County officer and employee; NEW MEXICO
DEPARTMENT OF PUBLIC SAFETY; and CITY OF LAS
CRUCES,

     Defendants.


**PLAINTIFFS' FIRST AMENDED COMPLAINT TO RECOVER
DAMAGES FOR THE LOSS OF CHANCE OF SURVIVAL
AND WRONGFUL DEATH OF ISAAC BREALEY-ROOD**


     Plaintiffs Kate Ferlic, in her capacity as the court-appointed Personal Representative of

the Wrongful Death Estate of Isaac Brealey-Rood, who died at the age of 16 on July 8, 2020,

Carissa Brealey (mother) James Rood (father), Aidan Brealey-Rood (brother), and K.B.R.

(sister), a minor, by and through their counsel of record, McGraw & Associates, LLC, hereby

bring claims pursuant to the New Mexico Wrongful Death Act and the New Mexico Tort Claims

Act against Defendants for the loss of chance of survival and wrongful death of Isaac Brealey-

Rood.

1

EXHIBIT 1

Following a thorough investigation, Plaintiffs bring the following causes of action against Defendants based upon their knowledge, information, and belief:

**PARTIES AND VENUE**

1.   **Plaintiff Kate Ferlic** resides and can be found in Santa Fe County, New Mexico. Ms. Ferlic was appointed to serve as the Personal Representative of the Wrongful Death Estate of Isaac Brealey-Rood, deceased, on November 19, 2020.

2.   **Plaintiff Carissa Brealey,** a resident of Dona Ana County, New Mexico, is the adoptive mother of Isaac Brealey-Rood, deceased, the adoptive mother and guardian of K.B.R., a minor, and the biological mother of Aidan Brealey-Rood.

3.   **Plaintiff James Rood**, a resident of Loudoun County, Virginia, is the adoptive father of Isaac Brealey-Rood, deceased, the adoptive father and guardian of K.B.R., a minor, and the biological father of Aidan Brealey-Rood.

4.   **Plaintiff Aidan Brealey-Rood,** a resident of Dona Ana County, New Mexico, is the adoptive brother of Isaac Brealey-Rood, deceased.

5.   **Plaintiff K.B.R.**, a minor, is a resident in Dona Ana County, New Mexico, and is the adoptive sister of Isaac Brealey-Rood, deceased. K.B.R. is a minor, appearing in this matter by and through her adoptive mother and legal guardian, Carissa Brealey.  Due to her protected status as a minor, Plaintiffs refer to her by her initials only.

6.   At all material times, **Defendant Mesilla Valley Regional Dispatch Authority Board of Directors** (hereinafter **"MRVDA"),** was located, and had its home office at 911 Lake Tahoe Court in Las Cruces, New Mexico.

7.   Defendant MRVDA is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 §41-4-3. As a body politic,

MRVDA may be sued in its name, and it has the authority and responsibility to hire, supervise, train and control its dispatchers, call takers, 911 operators and other employees.

8.  At all material times, Defendant MRVDA employed, and had supervisory responsibility over individually named **Defendants Daniel Gutierrez**, **David Woodward** and **Quinn Patterson**.

9.  At all material times, **Defendant Daniel Gutierrez** was a full time, salaried law enforcement officer and public employee, working in the scope of duty as those terms are defined in the NMSA 1978 §§41-4-3(D), F(2-3) and 41-4-12.

10. At all material times, **Defendant David Woodward** was a full time, salaried law enforcement officer and public employee, working in the scope of duty as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 §§41-4-3(D), F(2-3) and 41-4-12.

11. At all material times, **Defendant Quinn Patterson** was a full time, salaried law enforcement officer and public employee, working in the scope of duty as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 §§41-4-3(D), F(2-3) and 41-4-12.

12. The Emergency Medical Services Act provides that Dispatchers / 911 Operators can be sued under the New Mexico Tort Claims Act. *See* NMSA 1978,  § 24-10B-8 ("In any claim for civil damages arising out of the provision of emergency medical services by personnel described in Section 24-10B-5 NMSA 1978, those personnel shall be considered health care providers for purposes of the Tort Claims Act if the claim is against a governmental entity or a public employee as defined by that act."

13.   An "emergency medical dispatcher" is one of the people described in Section 24-10B-5,

and Section 24-10B-3(J) indicates that an "emergency medical dispatcher" is "a person who

is trained and licensed pursuant to Subsection F of Section 24-10B-4 NMSA 1978 to

receive calls for emergency medical assistance, provide pre-arrival medical instructions,

dispatch emergency medical assistance and coordinate its response."

14.   Defendants Gutierrez, Woodward and Patterson, and the NMDPS Dispatcher described

herein, were "emergency medical dispatchers", as defined in Section 24-10B-3(J), at all

material times.

15.   Section 41-4-10 of the New Mexico Tort Claims Act states that there is no immunity from

suit for "for damages resulting from  . . . wrongful death . . . caused by the negligence of

public employees licensed by the state or permitted by law to provide health care services

while acting within the scope of their duties of providing health care services."

16.   Defendants Gutierrez, Woodward and Patterson are referred to collectively as **"MRVDA**

**Dispatchers / Operators / Call Takers"**, including where it is unclear from the evidence

currently available to Plaintiffs which individual MRVDA employee acted or failed to act

in a specific instance.

17.   At all material times, **Defendant Dona Ana Board of County Commissioners** (hereinafter

"Defendant Dona Ana County" or "Dona Ana County") is an incorporated county and is

duly organized under the laws of the State of New Mexico.

18.   Defendant Dona Ana Board of County Commissioners is a governmental entity and local

public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978

§§41-4-3. As a body politic, Dona Ana County Board of County Commissioners may be

sued in its name, and it has the authority and responsibility to hire, supervise, train and

control the Dona Ana County Fire Prevention Specialists.

19.     At all material times, Defendant Dona Ana County Board of County Commissioners employed and had supervisory responsibility over individual-named Defendants Fire Prevention Specialist Arturo Herrera (1775) and Adrian Herrera (1775).

20.     At all material times, **Defendant Arturo Herrera (1773)** was a full time, salaried law enforcement officer and public employee, as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 §§41-4-3(D), F(2-3) and 41-4-12.

21.     At all material times, **Defendant Adrian Herrera (1775)** was a full time, salaried law enforcement officer and public employee, as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 §§41-4-3(D), F(2-3) and 41-4-12.

22.     At all material times, **Defendant New Mexico Department of Public Safety (NMDPS)** is a state governmental entity and public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 §§41-4-3. At all material times hereto, the State of New Mexico operated and governed the NMDPS, which operated the division named the **New Mexico State Police Department (NMSP)**.  As a body politic, Defendant NMDPS may be sued and it has the authority to hire, supervise, train and control NMSP officers, 911 operators, call takers, dispatchers, and other employees.

23.     At all material times, **Defendant City of Las Cruces** is a local governmental agency with offices located at 700 N. Main Street in Las Cruces, Doña Ana County, New Mexico. Defendant City of Las Cruces is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978 §§41-4-3. As such, it may be sued in its name, and it has the authority to hire, supervise, train and control firefighters, emergency medical technicians (EMTs), and other employees.

24.     The incident giving rise to this Complaint occurred on or about July 7, 2020 at Baylor Canyon Pass Trail in Doña Ana County, New Mexico.

25.    At all times pertinent, Defendants MRVDA, Dona Ana County, City of Las Cruces and

NMDPS acted through their law enforcement officers and public employees, and are legally

responsible for their actions through the principle of *respondeat superior.*

26.    The law enforcement officers and public employees who were involved with the July 7,

2020 incident involving Isaac-Brealey Rood were acting in the course and scope of their

employment, and acted with actual or apparent authority of Defendants MRVDA, Dona

Ana County and NMDPS, at all material times.

27.    Defendants MRVDA, Dona Ana County, NMDPS and City of Las Cruces are vicariously

liable for any actions of their respective employees and agents, including the individual

named Defendants, and any other public employees and law enforcement officers who were

involved in and/or present at the trailhead for the July 7, 2020 incident.

28.    Each of the law enforcement officers and public employees involved in the July 7, 2020

incident owed direct individual duties to Isaac Brealey-Rood.

29.    At all times pertinent, Defendants MRVDA, Dona Ana County, City of Las Cruces and

NMDPS possessed direct duties and responsibilities to Isaac Brealey-Rood. These duties

include but are not limited to hiring, training, supervising, and preventing the spoliation of

evidence. Defendants MRVDA, Dona Ana County, City of Las Cruces and NMDPS are

liable to Plaintiffs for breaches of these duties and for their negligent and reckless

policymaking, training, and supervision of its law enforcement officers and public

employees, including but not limited individually named Defendants herein.

30.    The Legislature waived the immunity granted in Section 41-4-4 for negligence in the

operation or maintenance of any machinery or equipment for which Defendants are

responsible, including but not limited to CAD Systems and cell phones. *See* NMSA 1978 §

41-4-6(A).

31.     The failure to provide equipment or proper training in the use of equipment is considered
        "operation and maintenance" as contemplated by Section 41-4-6(A).

32.     Computer Aided Dispatch (CAD) Systems are utilized by MRVDA and NMDPS, call
        takers and 911 operators to prioritize and record incident calls, identify the status and
        location of responders in the field, and effectively dispatch responder personnel.

33.     Emergency responders, including responders employed by Dona Ana County Fire, Dona
        Ana County Sheriff, Las Cruces Fire Department, Las Cruces Police Department, New
        Mexico State Police, American Medical Response (AMR), among others, can receive
        messages initiated by MRVDA's CAD system via their mobile data terminals (MDTs),
        radios, and work-provided cell phones.

34.     Upon information and belief, MRVDA's CAD systems also interfaces with a geographic
        information system (GIS), an automatic vehicle location (AVL) system, a caller
        identification (ID) system, logging recorders, and various databases.

35.     MRVDA's CAD System does not have constant interface with NMDPS's CAD System, but
        MRVDA and NMDPS are able to send information and calls over interoperability radio
        channels and phone lines.

36.     NMDPS employees, including NMSP Officers, dispatchers, call takers and 911 operators,
        can see and access MRVDA's CAD System.

37.     Emergency Responders – other than NMSP officers, dispatchers, call takers and 911
        operators – do not have access to communications and data issued by NMDPS's CAD
        System.

38.     Typically, when a dispatcher receives a call, the CAD system displays the location of the
        caller, and the dispatcher can log additional information relevant to the incident. The
        dispatcher contacts the appropriate agency and closest available personnel to respond via

two-way radio, phone, and/or MDT. The response status to the call is logged by the

dispatcher from start to finish. Logging recorders can store information such as call time

and duration for later retrieval.

39.    Both MRVDA's and NMDPS' CAD Systems created CAD Response Reports and audio

files of dispatch and emergency responder communications for the July 7, 2020 incident.

40.    The Legislature waived the immunity granted in Section 41-4-4 NMSA 1978 for negligence

of public employees during the operation of any motor vehicle for which Defendants are

responsible. *See* NMSA 1978 § 41-4-5.

41.    The Legislature waived the immunity granted in Section 41-4-4 NMSA 1978 for wrongful

death resulting from law enforcement offers' failure to comply with duties established

pursuant to statute or law or any other deprivation of any rights, privileges or immunities

secured by the constitution and laws of the United States or New Mexico when caused by

law enforcement officers while acting within the scope of their duties. *See* NMSA 1978 §

41-4-12.

42.    On November 12, 2020, Plaintiffs provided notice to the governmental entities named

herein of their intent to pursue civil claims for the wrongful death of Isaac Brealey-Rood

and related damages, pursuant to NMSA 1978, § 41-4-16.

43.    Jurisdiction and venue are proper in this Court pursuant to NMSA 1978, § 41-4-8.

**FACTUAL ALLEGATIONS**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

**Heat Stroke**

44.    Heat stroke, also known as hyperthermia, is a life-threatening emergency.

45.    Heat stroke has a high rate of death if not treated promptly.

46.    Minutes matter in treating heat stroke.

47.     "Children with heat stroke require aggressive and rapid cooling because the extent of
        end-organ damage and mortality is ***related to the duration*** of hyperthermia."[1]

48.     A critical initial medical intervention for heat stroke is to cool the patient's body, e.g.,
        applying ice packs, cool water and/or cooling blankets.

**Isaac Brealey-Rood, Decedent**



49.     Isaac Brealey-Rood was born in Colombia on June 17,
        2004.

50.     Isaac was adopted by his parents, Carissa Brealey and
        James Rood, in 2007, when he was three years old.

51.     Isaac was intellectually disabled with cognitive delays.

52.     Isaac enjoyed communicating with others and was known for his infectious smile.

53.     Isaac attended special education classes within the Las Cruces Public Schools.

54.     Prior to the events of July 7, 2020, Isaac Brealey-Rood was a healthy and active 16-year-
        old, attending Onate High School with his brother and best friend, Aidan Brealey-Rood.

55.     Isaac enjoyed listening to music, playing video games, participating in band, cooking,
        hanging out with Aidan and K.B.R., and hiking with his family and their dogs.

56.     Isaac was physically fit and athletic.

57.     Isaac participated in the Special Olympics, played recreational ice hockey, and won awards
        in track, flag football, and basketball tournaments.

---

[1] Ishimine, P. Heat Stroke in Children. In: *UpToDate*, Post TW (Ed), UpToDate, Waltham, Ma
(Accessed on Jan. 21, 2021)



**Isaac Brealey-Rood with his brother, Aidan, and sister, K.B.R.**

58.   Aidan and Isaac shared a special bond.  They were brothers and best friends.

59.   Aidan and Isaac were the same age. They shared a bedroom, and a love of sports and band.

60.   Aidan was a member of the Onate Royal Knight Regiment marching band. Aidan

      encouraged Isaac to join him for band camp during the summer of 2019, with Carissa's and

      James' permission.

61.   In September 2019, Isaac and Aidan surprised Carissa during the Onate Royal Knight

      Regiment marching band's first performance of the season when both brothers appeared

      together in the drum line. Isaac was playing a drum pad to

      his mother's astonishment.

62.   Carissa shared a video of Isaac's surprise performance to a

      special needs children's group on Facebook, which quickly

      went viral, and Isaac received international media attention.

**Isaac and Aidan
Onate Homecoming 2019**

63.   At the time of his death, Isaac was looking forward to

      starting his sophomore year with his brother, Aidan, at Onate High School.

64.   Isaac's tragic death was mourned throughout the community because of his dynamic

      presence and "zest for life."

**Tuesday, July 7, 2020**

65.   On the morning of Tuesday, July 7, 2020, Carissa Brealey took her two sons, Isaac and
      Aidan, and the families' two dogs hiking on Baylor Canyon Pass Trail, a frequently used
      hiking trail, located just east of the City of Las Cruces, in Dona Ana County, New
      Mexico.

66.   After eating breakfast, the trio left their house in east Las Cruces at approximately 8:30
      a.m.

67.   They stopped at Starbucks on the way to the trailhead. Isaac ordered an iced Smores
      Frappuccino.

68.   Isaac left his partially consumed iced Frappuccino in the family's vehicle in the parking
      lot at the trailhead to Baylor Canyon Pass Trail.

69.   Carissa, Isaac and Aidan began hiking Baylor Canyon Pass Trail at approximately 9 a.m.

70.   After approximately one hour of hiking, Isaac began experiencing fatigue, and was
      stumbling and tripping. The trio took a ten-minute break at the bench on the trail, but
      Isaac still looked tired, and was red and sweaty.

71.   Carissa checked the temperature on her phone and noted that it was 84 degrees
      Fahrenheit.

72.   Shortly thereafter, while they were hiking back to their vehicle, Isaac's feet went out
      from under him, and his hand fell in a cactus.

73.   Carissa and Aidan tried to help Isaac get up, but he was unable to get up.

74.   Carissa and Aidan, together, tried to carry Isaac but they were unable to do so.

75.   Carissa struggled to dragged Isaac to shade his body under vegetation along the trail.

76.   Carissa instructed Aidan to take the dogs back to the vehicle and to get water, while she
      stayed with Isaac.

77. When Aidan reached the vehicle, he called his mother on her cell phone and told her Isaac's iced Frappuccino was still cold in the vehicle.

78. Aidan ran the iced Frappuccino up the trail to Isaac and his mother. It took him less than ten minutes to reach his mother and brother on the trail.

79. When Aidan arrived at his brother's location on the trail, Carissa was on a 911 call.

**Carissa Brealey's First 911 Call (10:16 a.m. to 10:41 a.m.)**

80. On July 7, 2020 at 10:16 a.m., Carissa Brealey dialed 911 because she needed medical assistance quickly.  Her son, Isaac Brealey-Rood, had become overheated, non-responsive, and then lost control of his bowels on Baylor Canyon Pass Trail.

81. Carissa Brealey's 911 call connected with the Mesilla Valley Regional Dispatch Authority (MRVDA), and the call was answered by MRVDA Call Taker, Defendant Daniel Gutierrez.

82. According to the MRVDA's Computer Aided Dispatch (CAD) Report, the incident involving Isaac Brealey-Rood was also handled by Defendants David Woodward and Quinn Patterson.

83. MRVDA is responsible for dispatching the law enforcement, fire services and emergency medical services in Dona Ana County, the City of Las Cruces, the City of Sunland Park, the City of Anthony, the Town of Mesilla, and the Village of Hatch.

84. According to its website, "MRVDA provides personnel, training, and equipment necessary to ensure the most rapid response possible to any threat to life, limb or property to the citizenry of Dona Ana County."

85. Within the first 65 seconds of the 911 call, Carissa Brealey informed MRVDA's Gutierrez that she was on a hike with her 16-year-old son, Isaac Brealey-Rood, they were located "*on* Baylor Canyon Pass Trail …**about maybe three quarters of a mile from**

**the trailhead**", and that Isaac had become "**overheated**", was "**not responsive** right now", and had "**lost control of his bowels**", and she was in "**need if medical assistance quickly.**"

86.   The information Carissa Brealey immediately conveyed to MRVDA indicated Isaac Brealey-Rood was experiencing a life-threatening medical emergency.

87.   There was no indication that Carissa and Isaac were lost or that she was inaccurately conveying their location on Baylor Canyon Pass Trail, less than a mile from the trailhead.

88.   Carissa informed MRVDA's Gutierrez that, her other 16-year-old-son, Aidan Brealey-Rood, was also present with her and Isaac.

89.   Carissa informed MRVDA's Gutierrez that Aidan had walked down the trail to take the family's two dogs to the car in the parking lot.

90.   Carissa informed MRVDA she was trying to cool Isaac down with a leftover Starbuck's iced Frappuccino that was in their car, which was still cold, by rubbing it on him.

91.   During the first 911 call, MRVDA learned it took Aidan only "a few minutes" to reach the parking lot from where his mother and brother, Isaac, were located on the trail.

92.   The MRVDA Call Taker instructed Carissa to have her 16-year-old son, Aidan, wait in the parking lot.

93.   Carissa informed MRVDA that the hike from the trailhead to where she was located on the trail with Isaac, was "a wide, mostly flat trail with a slight elevation increase but it's not challenging."

94.   After MRVDA's Call Taker informed Carissa that he was going to disconnect with her, Carissa asked, **"Is there an ambulance coming that can take him to the hospital?"**

95.    The MRVDA's Call Taker responded "**Yeah,** I'm gonna talk with the dispatcher right
       now. Hold on one second for me, okay?"

96.    The MRVDA Call Taker chose not to tell Carissa that MRVDA had cancelled the
       ambulance almost 20 minutes earlier, at 10:23 a.m.

**Carissa Brealey's Second 911 Call (11:10 a.m. to 11:12 a.m.)**

97.    Thirty minutes after Carissa's first 911 call ended, she dialed 911 a second time at 11:10
       a.m. and was connected, once again, with the same MRVDA Call Taker.

98.    During her second 911 call, Carissa told MRVDA she knew "that the search and rescue
       team is in the parking lot".

99.    Carissa told MRVDA her "son's eyes are getting swollen… like he can't close his eyes",
       and that Isaac "was moaning a lot but he's not responsive."

100.   Carissa told MRVDA she was scared.

101.   During the second 911 call, the MRVDA Call Taker confirmed that emergency
       responders were in the parking lot of the trailhead: "**Again, they are in the parking lot.**
       **They're getting ready to come up to you guys, okay? They are just trying to get**
       **organized."**

102.   Carissa's second 911 call lasted 2 minutes and 20 seconds. The call concluded at 11:12
       a.m.

103.   Despite MRVDA's confirmation that emergency responders were in the parking lot, no
       one came to Isaac's aid for *another* 25 minutes.

104.   Instead, Isaac's brother Aidan, who was waiting in the parking lot at MRVDA's
       instruction, witnessed multiple emergency responders arrive and casually gather in the
       parking lot.

105. Initially, two men in uniform arrived at the parking lot together in a pickup. The men asked Aidan if he was related to the incident. Aidan gave them his name and date of birth and told them that his mother and brother were less than a mile up the trail.

106. Shortly thereafter, a number of additional emergency response units, arrived.

107. While Carissa remained on the trail with Isaac, her son Aidan was in the parking lot with emergency responders.

108. The emergency responders offered Aidan water and gave his two dogs water.

109. Despite Isaac's close proximity to the trailhead and parking lot, Isaac and Carissa's location on the trail was not timely or accurately communicated by MRVDA or NMDPS to emergency responders.

110. At 10:31 a.m., the NMDPS CAD Response Report incorrectly noted that Carissa and Isaac were 3 ¼ miles northbound of trailhead; instead of stating they were ¾ of a mile from the trailhead.

| 07/07/20<br>10:31:06 | socom03 | 353054 | INITIAL CALL - Call Source: PHONE, Caller Name: MVRDA, Caller Phone Number: , Caller Address: |
| --- | --- | --- | --- |
| | | | EVENT REMARK - 3 PPL TOTAL OUT<br>ONE MALE 16YO POSS HAVING HEAT STROKE<br>3 1/4 OF MILE NB OF TRAIL HEAD<br>NO WATER AVAIL<br>THEY HAVE 2 PHONES ONE HAS 77% BATTERY AND OTHER HAS 30%<br>RP CARISSA 575-571-9162 THIS WILL BE ON THE 77% PHONE |

**Excerpt from NMDPS's CAD Response Report**

111. Despite Isaac's close proximity to the trailhead and the parking lot, _no_ emergency responders ran or walked up the trail to access his condition or administer medical aid.

112. Defendants' delays caused Isaac to be exposed to the heat and elements for longer than necessary, as temperatures rose.

113. While emergency responders were in the parking lot, Carissa and Aidan called each other multiple times on their respective cell phones.

114. Despite Carissa's accessibility by cell phone, none of the emergency responder dispatched to this incident ever attempted to contact Carissa on her cell phone.

115. Aidan witnessed a large group of emergency responders speaking casually with each other in the parking lot, as his brother was in medical distress less than a mile away.

116. There was no sign of urgency among the emergency responders gathered in the parking lot of the trailhead.

117. Carissa, who was in communication with Aidan via their cell phones, told her son she could see from her location on the trail that a number of emergency responders had arrived in the parking lot. Carissa asked Aidan why the emergency responders weren't coming up the trail to help Isaac.

118. In addition to at least three (3) MRVDA employees, Defendants Gutierrez, Woodward and Patterson, handling this incident in their capacity as call takers, 911 operators and dispatchers, more than a dozen emergency responders arrived in the parking lot at Baylor Canyon Pass Trail on July 7, 2020 between 10:47 a.m. and 11:59 a.m.

119. According to reports created by the various agencies responding to this incident, emergency responders arrived at the trailhead at the following times:

   a. An NMSP Officer arrived at 10:47 a.m.[2]

   b. Dona Ana County's Fire Prevention Specialists Arturo Herrera (1773) and Adrian Herrera (1775) arrived at 11:00 a.m.

   c. NMSP Unit 446 arrived at 11:00 a.m.

   d. NMSP Unit 421 arrived at 11:03 a.m.

   e. LCFD's Chief Officer Tony Espiritu arrived at 11:05 a.m.

---

[2] *See* MRVDA audio file 2020-07-07_10.47.52_Ch.2.mps

    f.     LCFD's Rescue Unit 6, with three EMTs, arrived at 11:14 a.m.

    g.     NMPS Tactical Unit 13 (TAC13) arrived at 11:23 a.m.

    h.     According to LCFD reports, LCFD Squad 6, an ambulance containing two additional EMTs, arrived at 11:59 a.m.

120.    None of these emergency responders walked or ran up the trail to Isaac.

121.    Instead, Aidan, who was instructed by MRVDA to remain in the parking lot, was told emergency responders were waiting on a UTV to head up the trail.

122.    Upon information and belief, when the UTV arrived in the parking lot, a handful of emergency responders went up the trail, all riding on the UTV.

123.    At 11:37 a.m., *81 minutes* after her first 911 call to MRVDA, LCFD personnel reached Isaac and Carissa.

124.    LCFD personnel poured cold water on Isaac and inserted an IV, on the trail.

125.    The fastest way to deliver fluids in the field to a patient is via an EZ-IO drill, which provides immediate vascular access with the controlled insertion of an intraosseous needle to the central circulation system within seconds.

126.    There is no evidence in LCFD's Patient Care Report that an EZ-IO drill was contemplated or utilized.

127.    LCFD personnel did not use an EZ-IO drill on Isaac in the field.

128.    Within 5 minutes, at 11:41 a.m., the UTV returned to the parking lot with Isaac and Carissa on board.

129.    Isaac's temperature was noted to be 106 degrees (Fahrenheit).

130.    Isaac was placed in LCFD Squad 6, an ambulance, and transported to MountainView Regional Medical Center in Las Cruces, New Mexico.

131.    Isaac arrived at MountainView Regional Medical Center between 12:25 and 12:41 p.m.

132.   According to MountainView Regional Medical Center records, within an hour of his arrival, Isaac's temperature had dropped from 106 to 101.8 (Fahrenheit).

133.   Later that evening, Isaac was airlifted to University of New Mexico Hospital in Albuquerque, New Mexico.

134.   Isaac died the next day, July 8, 2020, of multi-organ failure at the age of 16.

135.   Isaac's cause of death is identified as "hyperthermia" (heat stroke) on his Certificate of Death.

136.   Defendants' negligence and reckless disregard caused unreasonable, unnecessary delays in a medical emergency, depriving Isaac Brealey-Rood of the opportunity to survive and resulting in wrongful death.

### REASONS FOR UNREASONABLE DELAYS IN RESPONDING TO ISAAC BREALEY-ROOD'S MEDICAL EMERGENCY

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

**MRDVA's Referral of a Medical Emergency Incident to Fire Prevention Specialists**

137.   At 10:21 a.m., MRVDA's Daniel Gutierrez called Dona Ana County Fire Prevention Specialist Arturo Herrera (1773) on his mobile phone.

138.   MRVDA's Gutierrez call to Fire Prevention Specialist Arturo Herrera (1773) was the first phone call MRVDA had directly with any outside agency personnel.

139.   According to Defendant Dona Ana County's website, "Fire Prevention Specialists are tasked with code and ordinance enforcement, occupancy inspections, occupancy plan reviews, and fire origin and cause determination investigations."

140.   The incident involving Isaac Brealey-Rood did not implicate or involve code and ordinance enforcement, occupancy inspections, occupancy plan reviews, or fire origin and cause determination investigations.

18

141.   None of Defendant Arturo Herrera (1773)'s job functions as a Fire Prevention Specialist coincide with the emergency medical response necessitated by Isaac's condition.

142.   There was no legitimate reason for MRVDA to contact a Fire Prevention Specialist for the July 7, 2020 medical emergency involving Isaac Brealey-Rood.

143.   MRVDA's Gutierrez's referral of the medical emergency involving Isaac Brealey-Rood to Fire Prevention Specialist Arturo Herrera (1773) was not in accordance with MRVDA's policies and procedures.

144.   Dona Ana County's Las Alturas Fire Station and New Mexico State University (NMSU) Fire Department are qualified to handle emergency medical incidents, and are routinely dispatched to respond to injured hikers in the Organ Mountains.

145.   MRVDA Defendants Gutierrez, Woodward and Patterson did not notify the nearest, most qualified fire departments, including Dona Ana County's Las Alturas Fire Station or NMSU Fire Department about this medical emergency incident.

146.   MRVDA's referral of the medical emergency incident involving Isaac Brealey-Rood to Fire Prevention Specialist Arturo Herrera (1773) caused unnecessary delays, depriving Isaac Brealey-Rood of the opportunity to obtain a better outcome.

**MRVDA's Failure to Adequately Convey Isaac's Symptoms**

147.   During MRVDA Daniel Gutierrez's initial phone call with Fire Prevention Specialist Arturo Herrera (1773) at 10:21 a.m., MRVDA did not adequately convey Isaac Brealey-Rood's symptoms.

148.   During the call, MRVDA's Gutierrez did not tell Herrera (1773) that Isaac was "unresponsive", or that he had "lost control of his bowels."

149.   During the call, MRVDA's Gutierrez did not tell Herrera (1773) that Isaac was "no longer sweating" or that he was suffering "possible heat stroke".

150.    Yet, *during* MRVDA Gutierrez's phone call with Herrera (1773), MRVDA's David Woodward documented in the MRVDA CAD Response Report, at 10:23:09: "Male no longer sweating **– possible heat stroke**".

**MRVDA Misclassified Incident as "Search and Rescue"**

151.    At 10:18 a.m., MRVDA's David Woodard classified the incident as a "Search and Rescue."

152.    MRDVA's Daniel Gutierrez also mischaracterized the major medical event unfolding on Baylor Canyon Pass Trail, by mis-informing Fire Prevention Specialist Herrera (1773) during their first phone call that "[w]e got a call for a search and rescue."

153.    The classification of this incident by MRVDA as a "Search and Rescue" was incorrect, and unsupported by the facts known to MRVDA.

154.    The facts known to MRVDA as of 10:18 a.m. include: the caller's 16-year-old son was "on Baylor Canyon Trail" … "about three-quarters of a mile from the trailhead."

155.    Carissa never indicated to MRVDA that she and Isaac were lost, or needed help being found.

156.    At 10:47 a.m., a MRVDA Dispatcher / 911 Operator told a NMDPS Dispatcher "They can't get off the trail because they have heat stroke. **They know exactly where they are**."

157.    Yet, at 10:49 a.m., MRVDA's Quinn Patterson documented in MRVDA's CAD System "1773 – Hold off on 55[3] for now since the pt is still on the mountain."

---

[3] "55" is the ten-code for ambulance.

158.   Isaac's and Carissa's location on the trail, was *less than* three quarters of a mile from the trailhead.

159.   An adult male walking at a brisk pace can cover the distance in less than 12 minutes.

160.   Carissa had the AllTrails app installed on her phone, and she had activated it to her record her hike with her sons on the morning of July 7, 2020.

161.   Carissa's AllTrails' recording from that day reveals the specific location, and coordinates, where she and Isaac were located on the trail, during both of her 911 calls to MRVDA.

162.   Carissa's AllTrails' recording also shows the trio had hiked 2.4 miles in just over an hour.





**Carissa Brealey's Alltrails app recording from July 7, 2020:**
https://www.alltrails.com/explore/recording/baylor-canyon-pass-via-baylor-canyon-road-f862d13

163.   MRVDA's classification of this incident as a "Search and Rescue" required MRVDA to
contact NMDPS Dispatch.

164.   Pursuant to New Mexico law, NMDPS is responsible for all Search and Rescue (SAR)
missions and only NMDPS can activate a SAR.

165.   NMDPS Dispatch then contacted Mesilla Valley Search and Rescue, which rejected the
call because the incident did not meet SAR criteria; it was a medical emergency, not a
lost hiker.

166.   MRVDA's Gutierrez, Woodward and Patterson incorrectly designated this call as a
"Search and Rescue" despite Carissa Brealey clearly conveying to MRVDA that she was
located on the Baylor Canyon Pass Trail, within three-quarters of a mile from the
trailhead, and could see emergency responders gathering in the parking lot at the trail
head.

167.   MRVDA's Gutierrez's, Woodward's and Patterson's classification of this incident as a
"Search and Rescue" caused needless delays, and deprived Isaac of the chance of a better
outcome.

**MRVDA Misclassified Incident as "Minor Medical" Call**

168.   At 10:20 a.m., MRVDA's Woodward classified the EMS call type as "Minor Medical."

169.   The classification of the call as a "minor medical" was incorrect, and unsupported by the
facts known to MRVDA.

170.   The appropriate call type for the July 7, 2020 incident was "Medical Risk: Emergency."

171.   The facts known to MRVDA as of 10:20 a.m. include: a 16-year-old was on a hike with
his mother and brother, when he became overheated, non-responsive, and had lost
control of his bowels.

172. The symptoms describe by Carissa Brealey to MRVDA indicated Isaac was in medical distress and was possibly suffering heat stroke.

173. MRVDA's Woodward's classification of this incident as a "Minor Medical" event caused needless delays, and deprived Isaac Brealey-Rood of the chance to survive, resulting in wrongful death.

**Ambulance Dispatched Twice, but Cancelled Twice by Fire Prevention Specialist Herrera**

138. An American Medical Response (AMR) ambulance was twice dispatched to the trailhead by MRVDA, but MRVDA cancelled each ambulance at the direction of Dona Ana County Fire Prevention Specialist Arturo Herrera (1773).

139. At 10:20 a.m., MRVDA's Woodward dispatched an AMR ambulance.

140. At 10:22 a.m., MRVDA's Gutierrez cancelled the AMR ambulance, at the direction of Fire Prevention Specialist Herrera (1773), despite MRVDA's knowledge that Isaac was suffering "possible heat stroke."

| Time | Description | Operator | Unit |
|---|---|---|---|
| 10:31:55 AM | RP IS CONFIRMING BAYLOR PEAK TRAIL | Woodard,David | NW-CAD-CT3 |
| 10:27:45 AM | PHASE 2 +32.393070 -106.604462 | Woodard,David | NW-CAD-CT3 |
| 10:26:13 AM | PT HAS LOST CONTROL OF HIS BOWELS | Woodard,David | NW-CAD-CT3 |
| 10:24:22 AM | WAS C/O BEING TIRED BEFORE INCIDENT | Woodard,David | NW-CAD-CT3 |
| 10:24:11 AM | PT WAS HIKING FOR ABOUT AN HOUR BEFORE INCIDENT | Woodard,David | NW-CAD-CT3 |
| 10:23:25 AM | CALLING NMSP | GUTIERREZ,DANIEL | NW-CAD-SUP2 |
| 10:23:10 AM | MALE NO LONGER SWEATING- POSSIBLE HEAT STROKE | Woodard,David | NW-CAD-CT3 |
| 10:23:09 AM | 1773 AND 1775 WILL BE ENR, PER 1773 DO NOT DISPATCH AMR AT THIS TIME | GUTIERREZ,DANIEL | NW-CAD-SUP2 |
| 10:22:47 AM | PT NOT RESPONSIVE | Woodard,David | NW-CAD-CT3 |
| 10:21:53 AM | 2ND PHONE# 575 520 5870 BATTERY 30% | Woodard,David | NW-CAD-CT3 |
| 10:21:25 AM | PT ISAAC BREALEY-ROOZ DOB 06/17/2004 | Woodard,David | NW-CAD-CT3 |
| 10:21:07 AM | CALLING TO ADV 1773 | GUTIERREZ,DANIEL | NW-CAD-SUP2 |
| 10:20:42 AM | TOTAL OF 3 PEOPLE IN PARTY | Woodard,David | NW-CAD-CT3 |
| 10:19:52 AM | RP HAS 77% BATT LIFE | Woodard,David | NW-CAD-CT3 |
| 10:19:45 AM | NO WATER | Woodard,David | NW-CAD-CT3 |
| 10:19:25 AM | NEG SYMPTOMS NEG EXPOSURE | Woodard,David | NW-CAD-CT3 |
| 10:19:16 AM | NO TESTING FOR COVID 19 | Woodard,David | NW-CAD-CT3 |
| 10:19:00 AM | BAYLOR PEAK | Woodard,David | NW-CAD-CT3 |
| 10:18:56 AM | RP STATING THEY ARE 3/4 MILE NORTH OF THE TRAILHEAD | Woodard,David | NW-CAD-CT3 |
| 10:18:31 AM | IS OVERHEATED FROM HIKE | Woodard,David | NW-CAD-CT3 |
| 10:18:26 AM | NOT TALKING | Woodard,David | NW-CAD-CT3 |

**Excerpt from MRVDA's CAD Response Report**

141.   At 10:47 a.m., MRVDA CAD Response Report indicate "NMSP requests fire / 55[4] be

dispatched now".

174.   At 10:47 a.m., more than 30 minutes after Carissa's first 911 call, the following verbal

communication[5] took place between MRVDA and NMDPS Dispatch:

| | |
|---|---|
| MRVDA: | Central dispatch, how may I help you? |
| NMDPS: | Hey this is Dela from State Police. |
| MRVDA: | Hey, how's it going? |
| NMDPS: | **I just wanna make sure you have the ambulance headed out to those people on Baylor Canyon, right?** |
| MRVDA: | **Um, not yet. We've got 1773 and 1775 from fire um but I can update the dispatcher that you guys are wanting them sent on their way now.** |
| NMDPS: | **Yeah if you can. The officer's requesting uh EMS to go out there.** Um also- |
| MRVDA: | Do you have unit 97?[6] |
| NMDPS: | No not yet he's headed out there. **But he says if it's heat stroke we need to get somebody out there as soon as possible - and they're not gonna wait for them.** |
| MRVDA: | Yeah, I understand. That's what I said too so… |
| NMDPS: | **Yeah. Um, the other thing is do, are they actually lost or is just because they can't get off of the trail because they have heat stroke?** |
| MRVDA: | **They can't get off the trail because they have heat stroke. _They know exactly where they are_-** |
| NMDPS: | But we know where they're at? |
| MRVDA: | Yeah, yeah. Um, the son, so I took the call, the son um, got real tired he said and then lost control of his bowels and kinda just passed out and he's not responsive. |
| NMDPS: | And that's the 16 year old? |
| MRVDA: | Yes, there's two 16 year olds. There's one that's down in the parking lot and the one that's sick. Where the mother is at. |
| NMDPS: | Do we know what kind of vehicle he's in? |
| MRVDA: | He's in a grey Volvo SUV. |
| NMDPS: | Okay. **Um, yeah if you could just get the EMS headed out there. I have a unit headed up on 70 right now so they're almost there. But they were requesting EMS.** |
| MRVDA: | Okay, I will let them know. |
| NMDPS: | Alrighty. Thank you. |
| MRVDA: | You're welcome. |
| NMDPS: | Buh-bye. |
| MRVDA: | Buh-bye. |

---

[4] "55" is a ten-code that means "ambulance"
[5] _See_ MRVDA audio file 2020-07-07_10.45.18_Ch13.mp3
[6] "97" is a ten-code that means "on scene"

142. Despite the clear directive from NMDPS to dispatch an ambulance due to heat stroke, at 10:49 a.m., MRVDA's Patterson and/or Woodward cancelled the AMR ambulance a second time, at the direction of Fire Prevention Specialist Herrera (1773), who had not yet arrived on scene.

| 11:11:20 AM | PTS EYES ARE PARTIALLY SWOLLEN | Woodard,David | NW-CAD-CT3 |
| 11:10:40 AM | RP CALLING BACK | Woodard,David | NW-CAD-CT3 |
| 10:49:39 AM | 1773- HOLD OFF ON 55 FOR NOW SINCE THE PT IS STILL ON THE MOUNTAIN | Patterson,Quinn | NWCADDAFD |
| 10:47:14 AM | NMSP IS ALMOST 9? | Woodard,David | NW-CAD-CT3 |
| 10:47:02 AM | NMSP REQ FIRE/55 BE DISPATCHED NOW | Woodard,David | NW-CAD-CT3 |
| 10:45:51 AM | NMSP CALLING | Woodard,David | NW-CAD-CT3 |
| 10:41:57 AM | RP WILL CB WITH UPDATES | Woodard,David | NW-CAD-CT3 |
| 10:41:46 AM | DISCONNECTING FROM RP TO CONSERVE BATTERY LIFE | Woodard,David | NW-CAD-CT3 |
| 10:38:55 AM | NOT TECHNICAL TO GET WHERE THEY ARE AT | Woodard,David | NW-CAD-CT3 |
| 10:38:38 AM | RP ADVISING THE TRAIL IS FLAT AND WIDE | Woodard,David | NW-CAD-CT3 |
| 10:37:52 AM | NO CHANGE IN PT STATUS | Woodard,David | NW-CAD-CT3 |
| 10:37:04 AM | RP TRYING TO COOL PT DOWN BY POURING A FRAPACHINNO ON HIS FACE | Woodard,David | NW-CAD-CT3 |

**Excerpt from MRVDA's CAD Response Report**

143. MRVDA's Gutierrez, Woodward and Patterson did not question these two directives to cancel the ambulance from Fire Prevention Specialist Herrera (1773), an unqualified source who was not yet on scene.

144. MRVDA's Gutierrez, Woodward and Patterson violated MRVDA Standard Operating Procedure (SOP) for Public Safety Call Taking and Dispatch, a safety policy, by canceling the AMR ambulance twice at the directive of Herrera (1773) who was not on scene, and who was not a medically trained first responder.

**6) Canceling Calls**

A) Citizen Request

1) In the event a citizen calls to cancel a response, EMS responders
will be informed of the request and will determine the course of
action to take.

B) Cancel From On Location Responder

1) EMS Units on location may determine to cancel a response.  In this
event MVRDA shall notify and request acknowledgement of all
responders and mutual aid responders and receive
acknowledgement from each.  Cancellation of a medical response
may be carried out if that request comes from an medically trained
first responder unit on the scene.

### Excerpt from MRVDA's Public Safety Call Taking and Dispatch SOP

145. MRVDA's Call Taker mislead Carissa Brealey in telling her medical assistance and an
ambulance was on the way.

146. MRVDA's Call Taker chose not to inform Carissa that the ambulance had been
canceled twice, at approximately 10:23 a.m. and 10:49 a.m., and was not en route.

147. The cancellations of the two AMR ambulances dispatched by MRVDA was in reckless
and wanton disregard for the health and safety of Isaac Brealey-Rood, and each
cancellation of an ambulance deprived Isaac of the chance to survive, resulting in
wrongful death.

**Failure to Establish Incident Command**

148. Homeland Security Presidential Directive-5 established a National Incident
Management System (NIMS) "to prepare for, respond to, and recover from domestic
incidents, regardless of cause, size, or complexity. To provide for interoperability and
compatibility among Federal, State, and local capabilities, the NIMS will include a core
set of concepts, principles, terminology, and technologies covering the incident
command system; multi-agency coordination systems; unified command; training;
identification and management of resources (including systems for classifying types of

resources); qualifications and certification; and the collection, tracking, and reporting of incident information and incident resources."

149.    Homeland Security Presidential Directive-5 mandates that an incident command be established to have "a single, comprehensive approach to domestic incident management … to ensure that all levels of government across the Nation have the capability to work efficiently and effectively together."

150.    Homeland Security Presidential Directive-5 was in effect at all times material hereto.

151.    When an incident command is established, all information flows through incident command.

152.    There is no evidence that an incident command was appointed or established at any time during this incident, in violation of Homeland Security Presidential Directive-5.

153.    NMDPS was responsible for initiating command and serving as incident command because it was the first agency on scene, and because it is the agency with the best ability to obtain resources.

154.    Even though NMDPS/NMSP failed to take command, its failure did not relieve the other responding agencies of the responsibility to establish incident command.

155.    Defendants' failure to establish an incident command was negligent and in reckless and wanton disregard for the health and safety of Isaac Brealey-Rood, and deprived Isaac of the chance to survive, resulting in wrongful death.

**Unreasonable Response Time Compared to Other Similar Incidents**

156.    A review of MRVDA CAD Response Reports for response times to injured hikers and others in the Organ Mountains from May 2016 to 2020 accentuates Defendants' unreasonable delays in responding to Isaac Brealey-Rood's medical emergency on July 7, 2020.

157.    In at least five incidents occurring between May 2016 and March 2020, emergency

responders *went up the trail on foot* to administer medical aid, including:

    a.    A May 5, 2016 incident on "A Mountain" in Las Cruces, in which MRVDA

dispatched an AMR ambulance, and AMR personnel "headed up trail" and made

contact with an injured biker within 23 minutes of the 911 call.

    b.    A January 1, 2017 incident on "A Mountain" in Las Cruces involving a female

with a broken ankle, in which AMR and NMSU Fire went up the trail and made

contact with the patient within 24 minutes of the 911 call.

    c.    An April 28, 2018 incident at the water fall on the Soledad Canyon hiking trail in

the Organ Mountains, involving a female who fell down and could not walk.

Numerous emergency responders, including AMR personnel, began hiking up the

trail *on foot* within 25 minutes of the initial 911 call to make contact with the

patient. An ATV followed and brought the patient down to the trailhead.

    d.    A June 12, 2017 incident involving a male hiker suffering "heat exhaustion …

vomiting and clammy" approximate one mile up the trail at Dripping Springs in the

Organ Mountains. AMR Medic 6 went up the trail and located the patient.  The

response time, from the initial 911 call to emergency responders arriving at the

patient, was less than 38 minutes.

    e.    A March 11, 2020 incident one (1) mile up Baylor Canyon Pass Trail, in which a

75-year-old hiker fell, fractured his hip and was unable to walk. Contact was made

with the patient on the trail within 67 minutes of the initial 911 call.

158.    Despite Isaac Brealey-Rood being located on Baylor Canyon Pass Trail, just .6 miles

from the trailhead parking lot, Defendants did not reach Isaac and his mother until 11:37

a.m. – 81 minutes after his mother first called 911, and 25 minutes after her second 911

call had concluded. During that time, a search and rescue mission was initiated and then aborted, no incident command was established, two AMR ambulances were cancelled, no emergency responders who responded to the July 7, 2020 incident contacted Carissa on her cell phone, and no emergency responders went up the trail *on foot* to provide emergency medical treatment to Isaac Brealey-Rood.

159.   Defendants' negligence and reckless and wanton disregard for the health and safety for a 16-year-old experiencing "possible heat stroke" in a known location on a frequently used trail caused multiple, unnecessary delays, each of which deprived Isaac Brealey-Rood of the window of opportunity to survive.

### LIABILITY OF DEFENDANTS

#### COUNT I:
#### NEGLIGENCE OF MESILLA VALLEY REGIONAL DISPATCH AUTHORITY (MRVDA)'S DANIEL GUTIERREZ, DAVID WOODWARD AND QUINN PATTERSON

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

160.   Defendants Gutierrez, Woodward and Patterson had the duty in any activities undertaken by them to exercise, for the safety of others, that care ordinarily exercised by reasonable, prudent, qualified law enforcement officers in light of what was being done. As part of that responsibility, Defendants Gutierrez, Woodward and/or Patterson had a duty to screen, classify and prioritize incoming 911 calls, and to take actions to prevent the deprivation of Isaac Brealey-Rood's rights secured by constitution, statute and common law.

161.   Defendants Gutierrez, Woodward and Patterson had the duty, as public employees, to exercise reasonable care when operating as call takers, dispatchers and 911 operators at MRVDA, including but not limited to:

a.    accurately screen, classify, and prioritize incoming 911 calls;

      b.      promptly dispatch the most qualified and appropriate emergency responders; and,

      c.      timely convey accurate information as to status, location and condition of the patient.

162.      Prior to July 7, 2020, Defendants Gutierrez, Woodward and Patterson knew or reasonably should have known that failure to perform these functions with reasonable care, under circumstances involving possible heat stroke, could result in imminent harm or death.

163.      Defendants Gutierrez, Woodward and Patterson breached their duty by negligently and recklessly designating the July 7, 2020 incident as a "search and rescue," contacting Dona Ana County Fire Prevention Specialists instead of the most qualified emergency responders, twice canceling an ambulance for Isaac Brealey-Rood, and failing to convey accurate information regarding Isaac's condition and location over dispatch channels.

164.      Each act and omission of Defendants Gutierrez, Woodward and Patterson, described above, resulted in wrongful death caused by the actions of public employees while acting in the scope of their duties in the operation or maintenance of a building, machinery and/or equipment.

165.      Defendants Gutierrez, Woodward and/or Patterson acts and omissions at issue herein occurred while they were utilizing MRVDA-provided equipment and machinery.

166.      These acts and omissions constitute negligence, and evidence of a reckless and wanton disregard for the health and safety of Isaac Brealey-Rood.

167.      The negligence, recklessness, willful, wanton and intentional acts of Defendants Gutierrez, Woodward and Patterson was a cause of Isaac Brealey-Rood's wrongful death and loss of chance for a better outcome.

168.    Defendants Gutierrez, Woodward and Patterson are liable for damages resulting from

their conduct, in an amount to be determined by a jury at trial.

**COUNT II:**
**NEGLIGENT HIRING, SUPERVISION, AND TRAINING BY**
**DEFENDANTS MESILLA VALLEY REGIONAL DISPATCH AUTHORITY (MRVDA)**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

169.    Defendant MRVDA knew or should have known that hiring, failing to properly supervise

and/or failing to properly train its employees would create an unreasonable risk of injury to

Isaac Brealey-Rood and others using the numerous trails in Southern New Mexico.

170.    Defendant MRVDA had the duty to implement adequate policies, and to properly hire,

train, and supervise MRVDA employees, including but not limited to Defendants

Woodward, Gutierrez and Patterson.

171.    Defendant MRVDA failed to use ordinary care in the hiring, supervision and training of its

employees.

172.    Defendant MRVDA failed to provide equipment, or proper training in the use of equipment

to its employees.

173.    Defendant MRVDA breached its duties by failing to adopt and enforce appropriate policies,

procedures and protocols, not implementing necessary training, and failing to adequately

supervise MRVDA employees.

174.    Defendant MRVDA's negligence in hiring, training and supervising MRVDA employees,

including but not limited Defendants Gutierrez, Woodward and Patterson, was a cause of

Isaac Brealey Rood's wrongful death and loss of chance of a better outcome.

175.    Defendant MRVDA is liable for damages resulting from its acts and omissions in its

negligent hiring, training and supervision of its employees in an amount to be determined

by a jury at trial.

**COUNT III:**
**NEGLIGENCE OF DONA ANA COUNTY FIRE PREVENTION SPECIALISTS**
**ARTURO HERRERA (1773) AND ADRIAN HERRERA (1775)**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

176.   Defendants Arturo Herrera (1773) and Adrian Herrera (1775) had the duty in any activity undertaken by them to exercise, for the safety of others, that care ordinarily exercised by reasonable, prudent, qualified law enforcement officers and public employees in what was being done.

177.   Defendants Arturo Herrera (1773) and Adrian Herrera (1775) duties included the duty to refrain from actions or inactions that acted to deprive Isaac Brealey-Rood of his rights secured by the constitution, statute and common law.

178.   Defendants Arturo Herrera (1773) and Adrian Herrera (1775) breached their duty by negligently and recklessly responding to a medical emergency for which they were not qualified, twice canceling an ambulance for Isaac Brealey-Rood before arriving on scene, not contacting Carissa Brealey directly on her cell phone, and not walking or running up the trail to administer aid to Isaac Brealey Rood.

179.   Each act and omission of Defendants Arturo Herrera (1773) and Adrian Herrera (1775), described above, resulted in wrongful death caused by the actions of public employees while acting in the scope of their duties in the operation or maintenance of Dona Ana County-provided equipment, machinery and motor vehicles.

180.   These acts and omissions of Defendants Arturo Herrera (1773) and Adrian Herrera (1775) constitute negligence, and evidence of a reckless and wanton disregard for the health and safety of Isaac Brealey-Rood.

181.    The negligence, recklessness, willful, wanton and intentional acts of Defendants Arturo

        Herrera (1773) and Adrian Herrera (1775) was a cause of Isaac Brealey-Rood's wrongful

        death and loss of chance for a better outcome.

182.    Defendants Arturo Herrera (1773) and Adrian Herrera (1775) are liable for damages

        resulting from their misconduct, in an amount to be determined by a jury at trial.

**COUNT IV:**
**NEGLIGENT HIRING, SUPERVISION, AND TRAINING BY**
**DONA ANA COUNTY BOARD OF COUNTY COMMISSIONERS**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

183.    Defendant Dona Ana County knew or should have known that hiring, failing to properly

        supervise and/or failing to properly train its employees, including but not limited to

        Defendants Arturo Herrera (1773) and Adrian Herrera (1775), would create an

        unreasonable risk of injury to Isaac Brealey-Rood and others using the numerous trails

        throughout Dona Ana County, New Mexico.

184.    Defendant Dona Ana County had the duty to implement adequate policies, and to properly

        hire, train, and supervise Dona Ana County employees.

185.    Defendant Dona Ana County failed to use ordinary care in the hiring, supervision and

        training of its employees.

186.    Defendant Dona Ana County breached its duties by failing to adopt and enforce appropriate

        policies, procedures and protocols, not implementing necessary training, and failing to

        adequately supervise Dona Ana County employees.

187.    Defendant Dona Ana County's negligence in hiring, training and supervising Dona Ana

        County employees, including but not limited to Defendants Arturo Herrera (1773) and

        Adrian Herrera (1775), was a cause of Isaac Brealey Rood's wrongful death and loss of

        chance of a better outcome.

188.   Defendant Dona Ana County is liable for damages resulting from its acts and omissions in

its negligent hiring, training and supervision of its employees in an amount to be

determined by a jury at trial.

**COUNT V:**
**NEGLIGENCE OF DEFENDANT NEW MEXICO DEPARTMENT OF PUBLIC**
**SAFETY LAW ENFORCEMENT OFFICERS**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

189.   Numerous Defendant NMDPS law enforcement officers, including but not limited to

NMSP Officers, dispatchers and 911 operators, had the duty in any activity undertaken

by them to exercise, for the safety of others, that care ordinarily exercised by reasonable,

prudent, qualified law enforcement officers and public employees in what was being

done, including the duty to refrain from actions or inactions that acted to deprive Isaac

Brealey-Rood of his rights secured by the constitution, statute and common law.

190.   NMDPS Dispatchers/Operators breached their duties as public employees to exercise

reasonable care when serving as dispatchers, including the duty to convey accurate

information regarding Isaac's location.

191.   NMDPS Dispatchers/Operators failed to accurately record and convey information

regarding Isaac Brealey-Rood location, incorrectly documenting in the NMDPS CAD

Response Report that Isaac was located 3 ¼ miles up the trail, and not dispatching and/or

confirming an ambulance was en route.

192.   NMDPS/NMSP Officers who responded to the July 7, 2020 incident breached their duty

by negligently and recklessly failing to establish incident command, not contacting

Carissa Brealey directly on her cell phone, and not walking or running up the trail to

administer aid to Isaac Brealey Rood.

193.    Each act and omission of  law enforcement officers described above, resulted in
        wrongful death caused by the actions of public employees while acting in the scope of
        their duties in the operation or maintenance of NMDPS-provided equipment, machinery
        and motor vehicles.

194.    These acts and omissions of NMDPS employees who were involved in and/or responded
        to the July 7, 2020 incident constitute negligence, and evidence of a reckless and wanton
        disregard for the health and safety of Isaac Brealey-Rood.

195.    The negligence, recklessness, willful, wanton and intentional acts of NMDPS employees
        who were involved in and/or responded to the July 7, 2020 incident was a cause of Isaac
        Brealey-Rood's wrongful death and loss of chance for a better outcome.

196.    Defendant NMDPS is liable for damages resulting from the acts and inactions of
        NMDPS employees in an amount to be determined by a jury at trial.

**COUNT VI:**
**NEGLIGENT HIRING, SUPERVISION, AND TRAINING BY**
**NEW MEXICO DEPARTMENT OF PUBLIC SERVICES (NMDPS)**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

197.    Defendant NMDPS knew or should have known that hiring, failing to properly supervise
        and/or failing to properly train its employees, including but not limited to NMSP officers,
        dispatchers, call takers, 911 operators, and other employees, would create an unreasonable
        risk of injury to Isaac Brealey-Rood and others using the numerous trails throughout the
        State of New Mexico.

198.    Defendant NMDPS had the duty to implement adequate safety policies, and to properly
        hire, train, and supervise NMSP officers, dispatchers, call takers, 911 operators, and other
        employees.

199.   Defendant NMDPS failed to use ordinary care in the hiring, supervision and training of its employees.

200.   Defendant NMDPS breached its duties by failing to adopt and enforce appropriate safety policies, procedures and protocols, not implementing necessary training, and failing to adequately supervise NMSP officers, dispatchers, call takers, 911 operators, and other employees.

201.   Defendant NMDPS' negligence in hiring, training and supervising NMSP officers, dispatchers, call takers, 911 operators, and other employees was a cause of Isaac Brealey Rood's wrongful death and loss of chance of a better outcome.

202.   Defendant NMDPS is liable for damages resulting from its acts and omissions in its negligent hiring, training and supervision of its employees in an amount to be determined by a jury at trial.

**COUNT VII:**
**SPOLIATION OF EVIDENCE BY DEFENDANTS**
**DONA ANA COUNTY BOARD OF COUNTY COMMISSIONERS AND**
**NEW MEXICO DEPARTMENT OF PUBLIC SAFETY**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

203.   Law enforcement officers have a duty to timely create and maintain records, and incident reports, for record keeping purposes. *See, e.g.,* NMSA 1978, § 29-3-11.

204.   Defendants Arturo Herrera (1773) and Adrian Herrera (1775) were law enforcement officers acting on behalf of Defendants Dona Ana County, at all material times hereto.

205.   Defendants Arturo Herrera (1773) and Adrian Herrera (1775) failed to document their involvement, create incident reports and maintain records of the July 7, 2020 incident.

206.    The locations and actions of Defendants Arturo Herrera (1773) and Adrian Herrera (1775) at all times during this incident is not known, or knowable, because of their failure to create incident reports, document their involvement, and maintain records.

207.    NMDPS/NMSP Officers who responded to the July 7, 2020 incident, including but not limited to NMSP Unit 446, NMSP Unit 421 and NMSP Tactical Unit 13, were law enforcement officers acting by and through Defendant NMDPS at all material times.

208.    Defendant NMDPS' law enforcement officers failed to document their involvement, create incident reports and maintain records of the July 7, 2020 incident.

209.    The identity, locations and actions of NMPS Officers who responded to the July 7, 2020 incident is not known, or knowable, because of the officers' failure to create incident reports, document their involvement, and maintain records.

210.    The decision by Defendant Dona Ana County's and Defendant NMDPS' law enforcement officers not to document their involvement, create incident reports and maintain records of the July 7, 2020 incident constitutes spoliation of evidence.

211.    Defendants' spoliation of evidence may disrupt, complicate, or defeat Plaintiffs' ability to prove some or all of their claims in this lawsuit.

212.    At a minimum, Defendants' wrongful actions warrant sanctions and an adverse inference instruction, and additionally give rise to a cause of action for intentional spoliation of evidence.

**COUNT VIII:**
**NEGLIGENCE OF DEFENDANT CITY OF LAS CRUCES**
**FIRE DEPARTMENT PERSONNEL**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

213.    Numerous Las Cruces Fire Department (LCFD) Personnel, acting on behalf of Defendant City of Las Cruces , had the duty in any activity undertaken by them to

exercise, for the safety of others, that care ordinarily exercised by reasonable, prudent, qualified emergency responders, emergency medical technicians (EMTs) and paramedics, in what was being done, including the duty to refrain from actions or inactions that acted to deprive Isaac Brealey-Rood of his rights secured by the constitution, statute and common law.

214.    As of 10:37 a.m., LCFD was aware that Isaac Brealey-Rood was experiencing symptoms consistent with heat stroke, which is a life-threatening medical emergency. Yet, LCFD personnel did not reach Isaac Brealey-Rood on the trail until 11:37 a.m.

215.    LCFD negligently provided medical care to Isaac Brealey-Rood.  The fastest way to deliver fluids in the field is via an EZ-IO drill, yet there is no evidence LCFD personnel contemplated or utilized an EZ-IO drill on Isaac Brealey-Rood.

216.    LCFD Personnel who responded to the July 7, 2020 incident breached their duty by negligently and recklessly failing to establish incident command, unreasonable delays in their response time, not ensuring an ambulance was en route, not contacting Carissa Brealey directly on her cell phone, not using an EZ-IO drill, and not walking or running up the trail on foot to administer medical aid to Isaac Brealey-Rood.

217.    Each act and omission of LCFD personnel described above, resulted in wrongful death caused by the actions of public employees while acting in the scope of their duties in the operation or maintenance of City of Las Cruces-provided equipment, machinery and motor vehicles.

218.    These acts and omissions of LCFD personnel who responded to the July 7, 2020 incident constitute negligence, and evidence of a reckless and wanton disregard for the health and safety of Isaac Brealey-Rood.

219.   The negligence, recklessness, willful, wanton and intentional acts of LCFD personnel
who responded to the July 7, 2020 incident was a cause of Isaac Brealey-Rood's
wrongful death and loss of chance for a better outcome.

220.   Defendant City of Las Cruces is liable for damages resulting from the acts and inactions
of LCFD personnel who responded to the July 7, 2020 incident, in an amount to be
determined by a jury at trial.

**COUNT IX:**
**NEGLIGENT HIRING, SUPERVISION, AND TRAINING BY**
**CITY OF LAS CRUCES**

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

221.   Defendant City of Las Cruces knew or should have known that hiring, failing to properly
supervise and/or failing to properly train its employees, including but not limited to
emergency responders, EMTs and paramedics, would create an unreasonable risk of injury
to Isaac Brealey-Rood and others using the numerous trails throughout the State of New
Mexico.

222.   Defendant City of Las Cruces had the duty to implement adequate policies, and to properly
hire, train, and supervise LCFD employees.

223.   Defendant City of Las Cruces failed to use ordinary care in the hiring, supervision and
training of its LCFD employees.

224.   Defendant City of Las Cruces breached its duties by failing to adopt and enforce
appropriate policies, procedures and protocols, not implementing necessary training, and
failing to adequately supervise LCFD employees.

225.   Defendant City of Las Cruces' negligence in hiring, training and supervising LCFD
employees was a cause of Isaac Brealey Rood's wrongful death and loss of chance of a
better outcome.

226.   Defendant City of Las Cruces is liable for damages resulting from its acts and omissions in

its negligent hiring, training and supervision of its LCFD employees in an amount to be

determined by a jury at trial.

## COUNT X:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

227.   Plaintiffs Carissa Brealey and Aidan Brealey-Rood were present with Isaac when he

required emergency medical assistance on Baylor Canyon Pass Trail on July 7, 2020.

228.   Plaintiff Carissa Brealey tried to drag her son but was unable to carry him.

229.   Plaintiff Aidan Brealey-Rood brought the family's dogs down to their vehicle, and returned

to his mother and brother, bringing with him Isaac's iced Frappuccino.

230.   Plaintiff Aidan Brealey-Rood returned to the parking lot at the trailhead, and waited there at

MRVDA's instruction, while maintaining contact with his mother via their cell phones.

231.   For more than 80 minutes after she first called 911, Plaintiff Carissa Brealey held her

distressed son, tried to soothe him, and cool his body with an iced Frappuccino, as she

waited for emergency responders to come to his aid.

232.   Plaintiff Carissa Brealey watched in dismay as emergency responders arrived and gathered

in the trailhead's parking lot, but failed to come up the trail, to her son's rescue.

233.   Plaintiff Carissa Brealey waited for emergency responders as she witnessed her son's

medical condition deteriorate.

234.   Plaintiff Aidan Brealey-Rood struggles with the fact that he was offered water by

emergency responders in the trailhead parking lot, as his brother lay on the trail less than a

mile away.

235.  The Defendants knew or should have recognized, from information available to them, that their acts and inactions, would cause severe emotional distress to Isaac Brealey-Rood's mother and brother who were present with him on the trail, waiting desperately for emergency responders to provide aid to Isaac.

236.  As a result of Defendants' acts and omissions, Plaintiffs Carissa Brealey and Aidan Brealey-Rood have suffered damages in an amount to be proven at trial.

## COUNT XI:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

237.  The acts and inactions of Defendants on July 7, 2020 was extreme and outrageous.

238.  The extreme and outrageous conduct of Defendants was intentional and/or in reckless disregard of Isaac Brealey-Rood's health and safety, and in disregard for the emotional well-being of Plaintiffs Carissa Brealey and Aidan Brealey-Rood, who were present and witnessed their loved one's demise as emergency responders unnecessary delayed.

239.  Plaintiffs Carissa Brealey and Aidan Brealey-Rood have suffered, and continue to suffer, extreme and severe emotional distress.

240.  The extreme and outrageous acts and omissions of Defendants is a cause of Plaintiffs Carissa Brealey and Aidan Brealey-Rood extreme and severe emotional distress.

## COUNT XII:
## LOSS OF CONSORTIUM

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

241.  Prior to his death, Isaac Brealey-Rood had a close familial relationship based on mutual dependence and a significant bond with each of his immediate family members, specifically: Plaintiffs Carissa Brealey, James Rood, Aidan Brealey-Rood, and K.B.R., a minor.

242.   As a consequence of Defendant's acts and omissions, Carissa Brealey's, James Rood's, Aidan Brealey-Rood's, and K.B.R.'s relationship with Isaac abruptly ended.

243.   Isaac's family members suffered a direct injury to their relationship with Isaac as result of his injuries and wrongful death.

244.   Isaac's family members have suffered and continue to suffer emotional distress from the loss of Isaac's companionship, society, comfort, love and affection.

245.   Defendants knew or should have recognized, from information available to them, that their acts and omissions, would cause severe emotional distress, loss of consortium and other damages to Isaac Brealey-Rood's parents and siblings with whom he resided, including Plaintiffs James Rood, Carissa Brealey, Aidan Brealey-Rood and K.B.R.

246.   As a result of Defendants' acts and omissions, Plaintiffs Carissa Brealey, James Rood, Aidan Brealey-Rood, and K.B.R., a minor, are entitled to loss of consortium damages in an amount to be determined at trial, and for such other relief as the Court deems just and proper.

## DAMAGES

Plaintiffs hereby incorporate by reference all previously alleged paragraphs.

247.   As a result of the acts and omissions of Defendants, Plaintiff Kate Ferlic seeks compensatory and special damages for the wrongful death estate of Isaac Brealey-Rood, including:

   a.   The reasonable expenses of necessary medical care and treatment, funeral and burial services for Isaac Brealey-Rood;

   b.   The pain and suffering experienced by Isaac Brealey-Rood due to the negligence of emergency responders;

c.   The lost earnings, the lost earning capacity and the value of lost household services of Isaac Brealey-Rood considering his age, earning capacity, health, habits and life expectancy;

d.   The value of Isaac Brealey-Rood's life apart from his earning capacity;

e.   The aggravating circumstances attending the wrongful acts of the Defendants; and,

g.   The loss to Isaac Brealey-Rood's wrongful death statutory beneficiaries of other expected benefits that have a monetary value.

248.   As the result of the acts and omissions of the Defendants, Plaintiffs Carissa Brealey, James Rood, Aidan Brealey-Rood and K.B.R. have suffered and continue to severe emotional distress and loss of consortium damages.

248.   Defendants' acts and omissions were of such an egregious nature, in reckless and wanton disregard to the health, safety and welfare of Isaac Brealey-Rood, as to entitle Plaintiffs to punitive and exemplary damages.

WHEREFORE, Plaintiffs seek a jury trial against all Defendants and pray for judgment against each Defendant for their separate acts of negligence and reckless disregard in an amount reasonable to compensate Plaintiffs for:

a.   damages as alleged in this Complaint in an amount to be ascertained at trial, recognizing the aggravating circumstances of Isaac Brealey-Rood's wrongful death and loss of chance for a better outcome;

b.   costs incurred in this litigation;

c.   pre-judgment and post-judgment interest; and

d.   any other relief this Court may deem just and proper.

Respectfully Submitted,

*Electronically Submitted*

/s/ Mollie McGraw
Mollie C. McGraw
Amanda S. Carmody
MCGRAW & ASSOCIATES, LLC
165 West Lucero Ave.
Las Cruces, NM 88005
(575) 523-4321
mollie@lawfirmnm.com
amanda@lawfirmnm.com

*Attorneys for Plaintiffs*