IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KATE FERLIC, as the Personal Representative
of the Wrongful Death Estate of
ISAAC-BREALEY-ROOD, a deceased minor,
CARISSA BREALEY, individually, and as the
Guardian and Next Friend of K.B.R., a minor;
JAMES ROOD, individually, and
AIDAN BREALEY-ROOD, individually,

    Plaintiffs,

v.                                                                                      No. 2:22-cv-633 DHU/KRS

MESILLA VALLEY REGIONAL DISPATCH AUTHORITY,
DANIEL GUTIERREZ, DAVID WOODWARD and
QUINN PATTERSON, individually and as
Mesilla Valley Regional Dispatch officers and employees,
DOÑA ANA COUNTY BOARD OF COUNTY COMMISSIONERS,
ARTURO HERRERA, individually and as
Doña Ana County officer and employee,
ADRIAN HERRERA, individually and as
Doña Ana County officer and employee,
NEW MEXICO DEPARTMENT OF PUBLIC SAFETY, and
CITY OF LAS CRUCES,

    Defendants.

**MEMORANDUM OPINION AND ORDER SUA SPONTE
CERTIFYING QUESTION TO THE NEW MEXICO SUPREME COURT
AND DENYING PENDING MOTIONS TO DISMISS WITHOUT PREJUDICE**

**THIS MATTER** is before the Court *sua sponte*. Neither party has asked the Court to certify any question of law to the New Mexico Supreme Court. Nevertheless, the briefing of *Defendant DPS's Motion to Dismiss First Amended Complaint* (Doc. 8) and *Defendants Mesilla Valley Regional Dispatch Authority and Daniel Gutierrez's Motion to Dismiss* (Doc. 49) raised a determinative and unsettled issue of New Mexico law. For the following reasons, the Court *sua sponte* certifies the following question to the New Mexico Supreme Court:

1

> Considering the Enhanced 911 Act, NMSA 1978 §§ 63-9D-1 to -11.1 (1989, as amended through 2017), and the Emergency Medical Services Act, NMSA 1978 §§ 24-10B-1 to -7 (1983, as amended through 2014), are 911 dispatchers immune from liability for negligence under the New Mexico Tort Claims Act?

Furthermore, the Court denies without prejudice the pending motions to dismiss (Docs. 8, 10, 49) pending resolution of the certification process.[1]  Any party may request reinstatement of the motions upon resolution of the certified question.

## BACKGROUND

This case stems from the July 8, 2020 death of 16-year-old Isaac Brealey-Rood.[2]  As alleged by the Plaintiffs, on July 7, 2020, Isaac went for a hike with his family on a trial east of Las Cruces.  Isaac left a partially consumed iced Frappuccino in the family's vehicle in the parking lot at the trailhead. The family began their hike at approximately 9:00 a.m.  After about an hour of hiking, Isaac began to show signs of fatigue and was stumbling and tripping.  The group took a ten (10) minute break, but Isaac remained tired, red, and sweaty.  Carissa checked the outside temperature on her phone which indicated it was eighty-four (84) degrees outside.  The family decided to hike back to their vehicle and while doing so, Isaac's feet went out from under him and his hand fell into a cactus. Carissa and Aidan, Isaac's brother, tried to help Isaac up, but he was unable to get up, even with assistance.  Carissa and Aidan attempted to carry Isaac but were unable.  Carissa then instructed Aidan to take the dogs back to the vehicle while she stayed with Isaac.

When Aidan reached the vehicle, he called Carissa on her cell phone and told her Isaac's Frappuccino was still cold.  Aidan ran the Frappuccino up the trail to Isaac and his mother.  It took

---

[1] Though the County Defendants' Motion to Dismiss (Doc. 10) does not raise the question of immunity under the Enhanced 911 Act, the Court finds that judicial efficiency will be best served by waiting to resolve all of the motions to dismiss simultaneously, following completion of whatever certification process the New Mexico Supreme Court deems appropriate.

[2] Applying a Rule 12(b)(6) standard, the background facts are taken from Plaintiffs' Complaint.

Aidan less than ten to reach Isaac and Carissa. When Aidan arrived, Carissa was on the phone with 911, asking for immediate medical assistance.

Carissa's 911 call reached Mesilla Valley Regional Dispatch Authority ("MVRDA") and was answered by Defendant Gutierrez. Carissa informed MVRDA that Isaac was overheated, had lost control of his bowels, and needed immediate medical assistance. She told MVRDA that she and Isaac were located about three quarters of a mile up the trail. Carissa indicated she was trying to cool Isaac down with the leftover Frappuccino by rubbing it on his body. MVRDA knew it took Aidan only a few minutes to reach Isaac and Carissa on the trail from the parking lot. MVRDA instructed Carissa to tell Aidan to wait in the parking lot. Carissa asked if an ambulance was coming and MVRDA told her it was – MVRDA did not inform Carissa that the ambulance had been cancelled about twenty (20) minutes earlier.

When help did not arrive for Isaac and Carissa on the trail, Carissa again called 911 and MVRDA told her that emergency responders were in the parking lot and were getting ready to go get them; however, no one came to help for another twenty-five (25) minutes. Aidan, feeling helpless and distraught, witnessed multiple emergency responders arrive to the parking lot and casually gather, while still not attempting to reach Isaac. In part, because MRVDA and the NMDPS CAD systems / equipment are not synced, the NMDPS CAD incorrectly noted that Carissa and Isaac were located three and a quarter (3 1⁄4) miles northbound of the trailhead, instead of three quarters (3⁄4) of a mile from the trailhead. No emergency responders ran or walked the trail in an attempt to reach Isaac and render necessary emergency aid.

Aidan was told that the emergency responders were awaiting a UTV unit, a vehicle with a stretcher area in the back. At 11:37 a.m., eighty-one (81) minutes after the first 911 call to MVRDA, Las Cruces Fire Department personnel reached Isaac and Carissa. The first responders

3

poured cold water on Isaac and inserted an IV, while he still remained on the trail. Within five (5) minutes of reaching Isaac, at approximately 11:41 a.m., the UTV returned to the parking lot with him in tow. Isaac was transported to Mountain View Regional Medical Center in Las Cruces. Later that evening, Isaac was airlifted to University of New Mexico Hospital in Albuquerque, New Mexico. The next day, on July 8, 2020, Isaac, 16 years old, died of multi-organ failure. His cause of death was hyperthermia (heat stroke). Plaintiff brought claims against Defendants for Negligence, Negligent Hiring, Supervision, and Training, Spoliation of Evidence, and Loss of Consortium.[3]

Three groups of defendants— Defendant New Mexico Department of Public Safety ("DPS"), Defendants Dona Ana County Board of County Commissioners, Arturo Herrera, and Adrian Herrera ("County Defendants"), and Defendants Mesilla Valley Regional Dispatch Authority and Daniel Gutierrez ("MVRDA Defendants")—filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* Docs. 8, 10, and 49. Among other issues, the MVRDA Defendants and Defendant DPS argue that they are immune from liability pursuant to the provisions of the Enhanced 911 Act, NMSA 1978, §§ 63-9D-1 to -11.1 (1989, as amended through 2017). These Defendants argue that Plaintiffs have asserted liability based on Defendants' actions as call takers, dispatchers, and 911 operators. However, the MVRDA and DPS Defendants argue they are given immunity for "all but 'intentional acts' in claims arising from 'installing, maintaining or providing enhanced 911 systems or transmitting 911 calls.' " Doc. 49 at 9 (quoting NMSA 1978, § 63-9D-10).

Section 63-9D-10 of the Enhanced 911 Act is called "Immunity" and states:

---

[3] Plaintiffs also initially brought claims for Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress, but Plaintiffs filed a Stipulated Notice of Dismissal of these claims. Doc. 26.

> Enhanced 911 systems are within the governmental powers and authorities of the local governing body or state agency in the provision of services for the public health, welfare and safety. In contracting for such services or the provisioning of an enhanced 911 system, except for intentional acts, the local governing body, public agency, equipment supplier, communications service provider and their officers, directors, vendors, employees and agents are not liable for damages resulting from installing, maintaining or providing enhanced 911 systems or transmitting 911 calls.

NMSA 1978, § 63-9D-10. The MVRDA Defendants state that *Leyba v. City of Santa Fe*, 198 F. Supp. 3d 1254 (D.N.M. 2016) (Mag. J. Lynch) is the *only* case that has addressed this immunity provision. The MVRDA Defendants argue:

> Magistrate Judge Lynch stated his goal was "to determine and give effect to legislative intent." *Id*. at 1261, *quoting, Baker v. Hedstrom*, 2013-NMSC-043, 309 P.3d 1047, 1050. Of note, the immunity provision of the Act that was before him excepted claims arising from 911 operations except "for willful or wanton negligence or intentional torts." Section 63-9D-10 was amended to its current language in 2017. *See* Laws 2017, ch. 122, § 6. Thus, the current language of the statute provides even more protection to 911 operations at this time. And the amendment adds even more substance to Magistrate Judge Lynch's conclusions: "As reflected in § 63-9D-10, the New Mexico legislature concluded that a negligence standard would operate too harshly on enhanced 911 systems and their employees." *Leyba*, 198 F. Supp. 3d, at 1262.

Doc. 49 at 10; *see also* Doc. 8 at 13-14 (similar argument by Defendant DPS). Both the MVRDA and DPS Defendants argue that Plaintiffs' Complaint alleges only negligence, so all of Plaintiffs' claims for the 911 operations are barred by the Enhanced 911 Act's immunity provision.

Plaintiffs argue there is no immunity under the Enhanced 911 Act for the MVRDA or DPS Defendants. First, Plaintiffs argue the "Enhanced 911 Act is wholly inapposite to this litigation" because "[n]othing in Plaintiffs' Complaint alleges liability arising from intentional acts for damages 'resulting from installing, maintaining or providing enhanced 911 systems or transmitting 911 calls.' " Doc. 58 at 18 (quoting Section 63-9D-10). Next, and more significantly for purposes of this Order, Plaintiffs argue: "*Leyba* did not mention the Emergency Medical Services Act or discuss any impact it might have on the interpretation of the immunity provided under the

5

Enhanced 911 Act." Doc. 58 at 18. Plaintiffs argue the Emergency Medical Services Act, Sections 24-10B-1 to -7 (1983, as amended through 2014), provides that "911 operators can be sued under the Tort Claims Act." Doc. 58 at 19.

The Emergency Medical Services Act states:

In any claim for civil damages arising out of the provision of emergency medical services by personnel described in Section 24-10B-5 NMSA 1978, those personnel shall be considered health care providers for purposes of the Tort Claims Act if the claim is against a governmental entity or a public employee as defined by that act.

NMSA 1978, § 24-10B-8. Plaintiffs argue:

An "emergency medical dispatcher" is one of the people described in Section 24-10B-5, and Section 24-10B-3(J) states an "emergency medical dispatcher" is "a person who is trained and licensed pursuant to Subsection F of Section 24-10B-4 NMSA 1978 to receive calls for emergency medical assistance, provide pre-arrival medical instructions, dispatch emergency medical assistance and coordinate its response." Therefore, there are strong indications from the Emergency Medical Services Act that the legislature intended for 911 dispatchers to be subject to liability under the NMTCA. In order to reconcile the Enhanced 911 Act and the NMTCA, the Enhanced 911 Act should be construed to provide immunity *only for those situations where there is some technical failure in the 911 system.*

Doc. 58 at 19.

For their part, the MVRDA Defendants argue that, while the Emergency Medical Services Act

does suggest that certain classes of emergency services personnel may be considered "health care providers for purposes of the Tort Claims Act," it is clear that any liability is still subject to the intentional acts standard of Section 63-9D-10. Section 24-10B-8 was enacted in 1993. Section 63-9D-10 was last amended in 2017. The legislature is presumed to know the law when it enacts legislation. *See, State ex rel. Human Services Dep't*, 1994-NMSC-109, ¶ 15, 118 N.M. 563, 883 P.2d 149. Thus, one can only conclude that any claim for 911 operations that does not arise from an intentional act is barred.

Doc. 49 at 11 (footnote omitted).

The Court heard argument on this matter on August 24, 2023. At the hearing, the Court notified the parties of the possibility of it certifying a question of law on the subject to the New

Mexico Supreme Court. Plaintiffs indicated they had considered requesting that the Court certify a question related to 911 operator liability, though they did not make such a request. Defendants did not indicate whether they would be opposed to certification.

## DISCUSSION

### I. Question for Certification

The Court certifies the following question to the New Mexico Supreme Court:

Considering the Enhanced 911 Act, NMSA 1978 §§ 63-9D-1 to -11.1 (1989, as amended through 2017), and the Emergency Medical Services Act, NMSA 1978 §§ 24-10B-1 to -7 (1983, as amended through 2014), are 911 dispatchers immune from liability for negligence under the New Mexico Tort Claims Act?

The New Mexico Supreme Court has discretion to accept or reject this certification and to reformulate the question. *See* Rule 12-607(C)(4) NMRA.

### II. Certification is Warranted.

Under New Mexico Rules of Appellate Procedure, the New Mexico Supreme Court may answer questions of law certified to it by a federal court if "[1] the answer may be determinative of an issue in pending litigation in the certifying court and [2] the question is one for which answer is not provided by a controlling (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or (b) constitutional provision or statute of this state." Rule 12-607(A)(1); *see also* NMSA 1978, § 39-7-4 (1997) ("The supreme court of this state may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state.").

"The decision to certify a question to the state supreme court 'rests in the sound discretion of the federal court.'" *Kansas Jud. Rev. v. Stout*, 519 F.3d 1107, 1120 (10th Cir. 2008) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). This Court may certify a question to the New

Mexico Supreme Court sua sponte. *Id.* When determining whether to certify a question, the Court must exercise "judgment and restraint"—the Court "will not trouble [its] sister state courts every time an arguably unsettled question of state law comes across [its] desk[]." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). That said, the act of certifying seeks "to give meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state, not federal, courts." *Id.* And "when important and close questions of state legal policy arise . . . certification may 'in the long run save time, energy, and resources and help[ ] build a cooperative judicial federalism.'" *United States v. Reese*, 505 F. App'x 733, 734 (10th Cir. 2012) (quoting *Lehman Bros.*, 416 U.S. at 391) (alterations in original). Certification particularly promotes cooperative judicial federalism in "circumstances where a state court has not yet had the opportunity to interpret the pertinent statutory language." *Stout*, 519 F.3d at 1119 (internal quotation marks and citations omitted).

The Court certifies the above question because the answer will be determinative of an issue in this pending matter, that is, whether certain defendants are immune from suit, and there is no controlling appellate decision, constitutional provision or statute in New Mexico. This Court finds that the question is sufficiently novel that it feels uncomfortable attempting to decide it without further guidance. *See Pino*, 507 F.3d at 1236 ("While we apply judgment and restraint before certifying, however, we will nonetheless employ the device in circumstances where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance.") (citations omitted). The Court feels compelled to respectfully seek certification here where it does not appear that a state court has yet had the opportunity to interpret the interplay of the statutory provisions involved.

**III.     Names and Addresses of Counsel of Record:**

On behalf of Plaintiffs:

    Mollie C. McGraw
    McGraw & Associates, LLC
    165 West Lucero
    Las Cruces, NM 88005
    575-523-4321
    Email: mollie@lawfirmnm.com

On behalf of MVRDA Defendants:

    Thomas Lynn Isaacson
    Mason & Isaacson PA
    PO Box 1772
    Gallup, NM 87305
    505-722-4463
    Fax: 505-722-2629
    Email: tli@milawfirm.net

On behalf of County Defendants:

    Brandon Huss
    New Mexico Association of Counties
    444 Galisteo St
    Santa Fe, NM 87501
    505-820-8116
    Fax: 505-338-1173
    Email: bhuss@nmcounties.org

    David Anthony Roman
    New Mexico Association of Counties
    601 Rio Grande Blvd., NW
    Albuquerque, NM 87104
    505-820-8116
    Fax: 505-338-1173
    Email: droman@nmcounties.org

On behalf of Defendant New Mexico Department of Public Safety:

    Michael Dickman
    Law Office of Michael Dickman
    PO Box 549
    Santa Fe, NM 87504

    505-989-9360
    Fax: 505-992-8170
    Email: mikedickman@yahoo.com

On behalf of Defendant City of Las Cruces:

    Luis E. Robles
    Robles, Rael & Anaya, P.C.
    500 Marquette Ave., NW
    Suite 700
    Albuquerque, NM 87102
    505-242-2228
    Fax: 505-242-1106
    Email: luis@roblesrael.com

    Renni Gisele Zifferblatt
    Robles, Rael & Anaya, P.C.
    500 Marquette Ave NW
    Suite 700
    Albuquerque, NM 87102
    505-242-2228
    Email: renni@roblesrael.com

## CONCLUSION

For the reasons discussed in this memorandum order and opinion, the Court *sua sponte* certifies the above question to the New Mexico Supreme Court. Furthermore, the Court denies without prejudice the pending motions to dismiss ((Docs. 8, 10, 49) pending resolution of the certification process. Any party may request reinstatement of the motions upon resolution of the certified question.

**IT IS SO ORDERED.**

 

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE