**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KATE FERLIC, as the Personal Representative
of the Wrongful Death Estate of
ISAAC-BREALEY-ROOD, a deceased minor,
CARISSA BREALEY, individually, and as the
Guardian and Next Friend of K.B.R., a minor,
JAMES ROOD, individually, and
AIDAN BREALEY-ROOD, individually,

Plaintiffs,

v. No. 2:22-cv-633 DHU/KRS

MESILLA VALLEY REGIONAL DISPATCH AUTHORITY,
DANIEL GUTIERREZ, DAVID WOODWARD and
QUINN PATTERSON, individually and as
Mesilla Valley Regional Dispatch officers and employees,
DOÑA ANA COUNTY BOARD OF COUNTY COMMISSIONERS,
ARTURO HERRERA, individually and as
Doña Ana County officer and employee,
ADRIAN HERRERA, individually and as
Doña Ana County officer and employee,
NEW MEXICO DEPARTMENT OF PUBLIC SAFETY, and
CITY OF LAS CRUCES,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant DPS's Motion to Dismiss First Amended Complaint (Doc. 8), Defendant Doña Ana County Board of County Commissioners, Arturo Herrera, and Adrian Herrera's Motion to Dismiss in Lieu of Answer (Doc. 10), and Defendants Mesilla Valley Regional Dispatch Authority and Daniel Gutierrez's Motion to Dismiss (Doc. 49).[1] The Court heard oral argument on the motions. *See* Doc. 67. Having considered the

[1] Defendants David Woodard and Quinn Patterson joined Defendants MVRDA and Gutierrez's Motion. Doc. 54.

pleadings, the record before the Court, and the applicable law, the Court will **GRANT IN PART** and **DENY IN PART** Defendant DPS's Motion to Dismiss (Doc. 8); **GRANT IN PART** and **DENY IN PART** Doña Ana County Defendants' Motion to Dismiss (Doc. 10); and **GRANT IN PART** and **DENY IN PART** MVRDA Defendants' Motion to Dismiss (Doc. 49).

## I.
## BACKGROUND[2]

This case stems from the tragic July 8, 2020, death of 16-year-old Isaac Brealey-Rood. As alleged by the Plaintiffs, on July 7, 2020, Isaac went for a hike with his family on a trail east of Las Cruces. Doc. 1-1 at 11, ¶ 65. The family began their hike at approximately 9:00 a.m. *Id.* ¶ 69. After about an hour of hiking, Isaac began to show signs of fatigue and was stumbling and tripping. *Id.* ¶ 70. The group took a ten-minute break, but Isaac remained tired, red, and sweaty. *Id.* Carissa Breasley, Isaac's mother, checked the outside temperature on her phone which indicated it was 84 degrees outside. *Id.* ¶ 71. The family decided to hike back to their vehicle and while doing so, Isaac's feet went out from under him and his hand fell into a cactus. *Id.* ¶ 72. Carissa and Aidan, Isaac's brother, tried to help Isaac up, but he was unable to get up. *Id.* ¶ 73. Carissa and Aidan attempted to carry Isaac but were unable to do so. *Id.* ¶ 74. Carissa then instructed Aidan to take the dogs back to the vehicle to get water, while she stayed with Isaac. *Id.* ¶ 76.

When Aidan reached the vehicle, he called Carissa on her cell phone and told her Isaac's Frappuccino, which they had bought earlier, was still cold. *Id.* ¶ 77. Aidan ran the Frappuccino up the trail to Isaac and his mother. *Id.* ¶ 78. It took Aidan less than ten minutes to reach Isaac and Carissa. *Id.* When Aidan arrived, Carissa was on the phone with 911. *Id.* ¶ 76. Carissa's 911 call reached Mesilla Valley Regional Dispatch Authority ("MVRDA") and was answered by

---

[2] Applying a Rule 12(b)(6) standard, the background facts are drawn from Plaintiffs' Complaint. *See* Doc. 1-1.

Defendant Gutierrez. *Id.* ¶ 81. Carissa informed the MVRDA that Isaac was overheated, had lost control of his bowels, and needed immediate medical assistance. *Id.* ¶ 85. She told the MVRDA that she and Isaac were located about three quarters of a mile up the trail. *Id.* Carissa indicated she was trying to cool Isaac down with the leftover Frappuccino by rubbing it on his body. *Id.* ¶ 90. The MVRDA operator knew it took Aidan only a few minutes to reach Isaac and Carissa on the trail from the parking lot. *Id.* ¶ 91. The MVRDA instructed Carissa to tell Aidan to wait in the parking lot. *Id.* ¶ 92. Carissa asked if an ambulance was coming and the MVRDA told her it was – but the MVRDA did not inform Carissa that the ambulance had been cancelled about twenty (20) minutes earlier. *Id.* ¶¶ 94-96.

When help did not arrive for Isaac and Carissa on the trail, Carissa again called 911 and the MVRDA told her that emergency responders were in the parking lot and were getting ready to go get them; however, no one came to help for another 25 minutes. *Id.* ¶¶ 97-103. Aidan, feeling helpless and distraught, witnessed multiple emergency responders arrive at the parking lot and casually gather, while still not attempting to reach Isaac. *Id.* ¶ 104. The New Mexico Department of Public Safety (NMDPS) Computer Aided Dispatch (CAD) incorrectly noted that Carissa and Isaac were located three and a quarter (3 1⁄4) miles northbound of the trailhead, instead of three quarters (3⁄4) of a mile from the trailhead. *Id.* ¶ 110. No emergency responders ran or walked the trail in an attempt to reach Isaac and render necessary emergency aid. *Id.* ¶ 111.

Aidan was told that the emergency responders were awaiting a UTV (utility terrain vehicle) unit with a stretcher area in the back. *Id.* ¶ 121. At 11:37 a.m., 81 minutes after the first 911 call to MVRDA, Las Cruces Fire Department personnel reached Isaac and Carissa. *Id.* ¶ 123. The first responders poured cold water on Isaac and inserted an IV, while he remained on the trail. *Id.* ¶ 124. Within five minutes of reaching Isaac, at approximately 11:41 a.m., the UTV returned to the

parking lot with him in tow. *Id.* ¶ 128. Isaac was transported to Mountain View Regional Medical Center in Las Cruces. *Id.* ¶ 130. Later that evening, Isaac was airlifted to University of New Mexico Hospital in Albuquerque, New Mexico. *Id.* ¶ 133. The next day, on July 8, 2020, Isaac died of multi-organ failure. *Id.* ¶ 134. His cause of death was hyperthermia (heat stroke). *Id.* ¶ 135.

Plaintiffs now bring claims against various Defendants for Negligence, Negligent Hiring, Supervision, and Training, Spoliation of Evidence, and Loss of Consortium.[3] Plaintiffs allege Defendants' negligence and reckless disregard caused unreasonable and unnecessary delays during a medical emergency, depriving Isaac of the opportunity to survive and resulting in his wrongful death. *Id.* ¶ 136.

Three groups of defendants — Defendant New Mexico Department of Public Safety ("Defendant DPS"), Defendants Doña Ana County Board of County Commissioners, Arturo Herrera, and Adrian Herrera ("County Defendants"), and Defendants Mesilla Valley Regional Dispatch Authority, Daniel Gutierrez, David Woodward, and Quinn Patterson ("MVRDA Defendants") — have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* Docs. 8, 10, and 49.[4] Defendant City of Las Cruces joins these defendants in requesting dismissal. Doc. 107.

[3] Plaintiffs also initially brought claims for Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress, but Plaintiffs subsequently filed a Stipulated Notice of Dismissal of these claims. Doc. 26.

[4] During the pendency of this case, the Court certified a question to the New Mexico Supreme Court. *See* Doc. 69. At that time, the Court "denie[d] without prejudice the pending motions to dismiss (Docs. 8, 10, 49) pending resolution of the certification process." Doc. 69 at 10. The Court ordered, "Any party may request reinstatement of the motions upon resolution of the certified question." *Id.* After the New Mexico Supreme Court issued its decision, all three defendants requested reinstatement of their motions. Docs. 79, 81, and 83. Plaintiffs filed a Combined Response with Supplemental Authority to the three motions requesting reinstatement. Doc. 89. All three defendants filed replies with additional argument regarding the supplemental authorities filed by Plaintiffs. Docs. 92, 95, and 97. The Court then granted Defendants' requests to reinstate the

## II.
## LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint…" *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action… ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint does not need to include detailed factual allegations, "[f]actual allegations must be enough to raise a right to relief above the speculative level…." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this assessment, "[t]here is no fact-finding, as we accept [plaintiff's] well-pleaded factual allegations as true after setting aside mere legal conclusions. And the plaintiff receives the benefit of the doubt: [courts] view the facts in the light most favorable to the plaintiff and draw all reasonable inferences in [plaintiff's] favor." *Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1157 (10th Cir. 2026) (citing *Brooks v. Mentor*

---

three motions to dismiss. Doc. 103. Following reinstatement of the motions, Defendant City of Las Cruces filed its notice of joinder as to the three motions to dismiss. Doc. 107.

*Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)); *see also Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

"Together, these principles erect a relatively high bar for a Rule 12(b)(6) dismissal that leaves room for the district court to decide only one, largely legal question: whether the facts alleged, taken as true, plausibly state a claim upon which relief can be granted." *Vasquez-Garcia*, 172 F.4th at 1157 (citing *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011)). "Plausibility is not probability, simply 'more than a sheer possibility.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Brooks*, 985 F.3d at 1281).

**B. The New Mexico Tort Claims Act**

The New Mexico Tort Claims Act ("NMTCA"), N.M. STAT. ANN. §§ 41-4-1 through 4-4-27 (2001), grants state governmental entities and public employees acting within the scope of their duties immunity from tort liability unless that immunity is expressly waived by the Act. *See id*. at § 41-4-4 ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12."); *and* § 41-4-17 ("The Tort Claims Act shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act."). It is well-established that a plaintiff may not sue a New Mexico governmental entity or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions that the NMTCA grants for government entities and public employees. *See Begay*

*v. State*, 1985-NMCA-117, ¶ 10, 723 P.2d 252, *rev'd on other grounds by Smialek v. Begay*, 1986-NMCA-049, 721 P.2d 1306.

## III.
## DISCUSSION

Plaintiffs' First Amended Complaint ("Amended Complaint") contains counts of negligence and negligent hiring, supervision, and training against Defendant DPS (Counts V and VI), the County Defendants (Counts III and IV), the MVRDA Defendants (Counts I and II), and Defendant City of Las Cruces (Counts VIII and IX). *See* Doc. 1-1. In addition to the counts of negligence, Plaintiffs also allege claims for spoliation of evidence against Defendant DPS and Defendant Doña Ana Board of County Commissioners (Count VII) and a claim for loss of consortium against all defendants (Count XII). *See id*.

Defendant DPS moves for dismissal of both counts of negligence against it, arguing Plaintiffs have not sufficiently alleged enough to show that various waivers of immunity under the NMTCA apply. In Defendant DPS' view, any alleged waiver of immunity under Section 41-4-12 (liability of law enforcement officers) does not apply to DPS 911 operators, call takers, and dispatchers because they are not law enforcement officers as defined in the NMTCA. Doc. 8 at 10-12. Defendant DPS also questions the applicability of the waiver of immunity under Section 41-4-5 of the NMTCA, asserting that "there are simply no factual allegations in the [Amended] Complaint to infer, in any way, shape or form that any DPS employee negligently operated a motor vehicle, let alone that such negligence caused the wrongful death of Isaac." *Id*. at 6. Nor does the waiver under Section 41-4-6 apply, states Defendant DPS, because there is no plausible claim of negligence in the operation of any machinery or equipment. *Id.* at 7. Defendant DPS also seeks dismissal of any claims brought pursuant to the waiver in Section 41-4-10, again because, in its view of the pleadings, there are "simply no factual allegations in the [Amended] Complaint to infer

that any DPS employee . . . provided any 'health care services' to Isaac, or that he or she did so negligently." *Id*. at 9. The DPS Defendants also seek dismissal of the claim for spoliation of evidence, arguing that Plaintiffs fail to allege the "intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action." *Id*. at 15. Finally, the DPS Defendants move to dismiss Plaintiffs' claim for loss of consortium, stating that because there is no plausible waiver of immunity for any tort under the NMTCA, the derivative loss of consortium claim cannot survive. *Id*. at 17; Doc. 29 at 8.

The County Defendants (Doña Ana Board of County Commissioners, Adrian Herrera, and Arturo Herrera) raise several arguments similar to those raised by Defendant DPS in support of their request for dismissal.[5] For instance, like DPS, the County Defendants assert that any claims brought against them under the waiver of immunity found in Section 41-4-12 of the NMTCA should be dismissed because Defendant Arturo Herrera and Adrian Herrera are both Dona Ana County Fire Prevention Specialists, not law enforcement officers. Doc. 10 at 5. As such, according to the County Defendants, Plaintiffs' negligent supervision, hiring and training claim and their claim for spoliation must also fail. *Id*. at 6. The County Defendants also argue that Plaintiffs have not pled any fact from which the Court could find a plausible claim against them under Section

---

[5] The County Defendants begin their argument by claiming that Plaintiffs have not made any substantive fact allegations against Defendant Adrian Herrera. Doc. 10 at 5. The Court disagrees. Plaintiffs' Complaint alleges:

> Defendants Arturo Herrera (1773) and Adrian Herrera (1775) breached their duty by negligently and recklessly responding to a medical emergency for which they were not qualified, twice canceling an ambulance for Isaac Brealey-Rood before arriving on scene, not contacting Carissa Brealey directly on her cell phone, and not walking or running up the trail to administer aid to Isaac Brealey Rood.

Doc. 1-1 at 32. Though minimal, the Complaint does allege substantive factual allegations against both Arturo Herrera and Adrian Herrera.

41-4-5 for the negligent operation of a motor vehicle or under Section 41-4-6 for negligent operation of any equipment. *Id*. at 9. Finally, like the DPS Defendants, the County Defendants take issue with Plaintiffs' claim for loss of consortium, asserting that the claim is not a valid cause of action in this case. *Id*. at 9-10.[6]

The MVRDA Defendants (Mesilla Valley Regional Dispatch Authority, Daniel Gutierrez, David Woodward, and Quinn Patterson) also seek dismissal on similar grounds. Doc. 49. First, the MVRDA Defendants assert that Defendants Gutierrez, Woodard, and Patterson are not law enforcement officers, and thus the waiver of immunity found in Section 41-4-12 of the NMTCA does not apply to the claims brought against them. *Id*. at 3-4. Second, because these defendants are not law enforcement officers, Plaintiffs have not stated a claim for negligent hiring, supervision, and training. *Id*. at 7-8. Third, according to the MVRDA Defendants, the waiver of Section 41-4-6 of the NMTCA for negligent "operation or maintenance of a building, machinery and/or equipment" does not apply because "nowhere do Plaintiffs allege that there were any defects with the MVRDA building, nor with any equipment or machinery within the building." *Id.* at 4-5. Finally, the MVRDA Defendants seek dismissal of Plaintiffs' claim for loss of consortium, arguing that such claims are derivative, and, without a valid claim for waiver of immunity under a provision of the NMTCA, should be dismissed. *Id*. at 11.

In response, Plaintiffs argue that the named defendants are liable to them under various waivers of sovereign immunity in the NMTCA including: Section 41-4-12 (liability of law enforcement officers) against all defendants; Section 41-4-5 (negligence in the operation of motor vehicle) against both the DPS Defendants and the County Defendants; Section 41-4-6 (negligence

---

[6] The County Defendants also argue for dismissal of Plaintiffs' Negligent and Intentional Infliction of Emotional Distress claims. However, Plaintiffs subsequently dismissed these claims, Doc. 26, so the Court need not address this issue.

in the operation or maintenance of any machinery or equipment) against all defendants; and Section 41-4-10 (negligence by licensed health-care providers) against the DPS Defendants. Plaintiffs further respond that their claims for loss of consortium and spoliation of evidence should survive dismissal because waivers of immunity exist for the negligence of the named defendants.

**A. Claims Brought Under Section 41-4-12 of the NMTCA**

As stated above, Plaintiffs bring claims against Defendant DPS, the County Defendants, and the MVRDA Defendants under Section 41-4-12 of the NMTCA, which waives immunity for law enforcement officers who commit certain intentional torts or engage in the deprivation of a right secured by law. *See Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 6, 916 P.2d 1313 ("Section 41-4-12 sets out the applicable waiver of immunity for the acts or omissions of law enforcement officers."). More specifically, Section 41-4-12 provides that:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence, failure to comply with duties established pursuant to statute or law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico ***when caused by law enforcement officers while acting within the scope of their duties***. For purposes of this section, "law enforcement officer" means a public officer or employee ***vested by law with the power to maintain order***, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes.

N.M. STAT. ANN. § 41-4-12 (2020) (emphasis added).[7] The term "law enforcement officer" is also defined in Section 41-4-3 of the NMTCA, which states:

---

[7] Section 41-4-12 was amended twice in 2020, effective May 20, 2020, and September 20, 2020, respectively. The May 2020 amendment added a definition of "law enforcement officer" directly to Section 41-4-12, defining such as "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." N.M.

> "[L]aw enforcement officer" means a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, ***whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes,*** or members of the national guard when called to active duty by the governor.

N.M. STAT. ANN. § 41-4-3(D) (2015) (emphasis added).

Thus, at the time this lawsuit was filed and became pending, the statute provided two similar, but not identical, definitions of "law enforcement officer."[8] Under Section 41-4-3(D), a public employee of a governmental entity could be deemed a law-enforcement officer if his or her "principal duties under law [were] [1] to hold in custody any person accused of a criminal offense, [2] to maintain public order[,] ***or*** [3] to make arrests for crimes." *Id.* (emphasis added). After the 2020 amendments to the NMTCA, which added another definition of "law enforcement officer" directly to the language in Section 41-4-12, a public officer or employee could be considered a law enforcement officer if they were "*vested by law* with the power to maintain order, to make arrests for crime *or* to detain persons suspected of or convicted of committing a crime." N.M. STAT. ANN. § 41-4-12 (2020).

In both sections of the NMTCA, the state legislature chose to use the word "or" between the various means by which a public officer or employee could be considered a law enforcement officer. As noted by the Tenth Circuit Court of Appeals, "New Mexico courts have specifically

---

STAT. ANN. § 41-4-12 (2020), L. 2020, Ch. 5, § 14, eff. May 20, 2020. The September 2020 amendment extended the waiver of immunity in Section 41-4-12 to the "independent tort of negligent spoliation of evidence" and the "independent tort of intentional spoliation of evidence." *Id.*, L. 2020, 1st Sp. Sess., Ch. 7, § 3, eff. Sept. 20, 2020.

[8] As discussed in Section III.F. below, the 2020 amendments apply to Plaintiffs' claims because this litigation was commenced after September 2020. *See Methola v. Cnty. of Eddy*, 1980-NMSC-145, ¶ 14, 622 P.2d 234.

held 'this statutory language to be disjunctive.'" *Hernandez v. Fitzgerald*, 840 F. App'x 333, 337 (10th Cir. 2020) (quoting *Limacher v. Spivey* , 2008-NMCA-163, ¶ 9, 198 P.3d 370). In other words, under the definition of Section 41-4-3(D), the law-enforcement waiver applies so long as the public employee's principal duties include at least one of the three statutorily enumerated duties. *Id*. And under the amendment to Section 41-4-12, the waiver applies so long as the public officer or employee is vested by law with the power to perform at least one of the three enumerated duties. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (noting that "'or' is 'almost always disjunctive'" (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013))).

New Mexico courts define "principal duties" as "those duties to which [officers] devote a majority of their time." *Weinstein,* 1996-NMSC-021, ¶ 8. The NMTCA does not specifically define the phrase "maintain public order." But relevant caselaw provides that "for an employee to fall within the exception for maintaining public order, that person's duties must be traditional law[-]enforcement duties that directly impact public order." *Limacher*, 2008-NMCA-163, ¶ 15. The traditional duties of law enforcement officers are "admittedly amorphous," so the inquiry is fact-specific and "informed by a practical, functional approach as to what law enforcement entails today." *Coyazo v. State*, 1995-NMCA-056, ¶¶ 13, 18, 897 P.2d 234.

Traditional law-enforcement duties that directly impact public order include "preserving the public peace, preventing and quelling public disturbances, and enforcing state laws, including but not limited to the power to make arrests for violation of state laws." *Limacher*, 2008-NMCA-163, ¶ 23 (quoting *Anchondo v. Corrs. Dep't*, 1983-NMSC-051, ¶ 8, 666 P.2d 1255); *see also Baptiste v. City of Las Cruces*, 1993-NMCA-017, ¶ 6, 848 P.2d 1105, 1107 ("Maintaining public order can be accomplished without the power to arrest."). The NMTCA provides no definition for the phrase "vested by law" found in the amended Section 41-4-12.

**1. <u>Defendant DPS</u>**

Defendant DPS argues Plaintiffs have not sufficiently alleged a waiver of immunity under Section 41-4-12 of the NMTCA for the claims brought against the DPS 911 operators, call-takers, and dispatchers. DPS concedes that police officers employed by DPS are "law enforcement officers" under the NMTCA but contends that "the issue is dubious with respect to 911 dispatchers, call takers and operators." Doc. 8 at 10.[9] Defendant adds that, "even assuming arguendo that dispatchers, call takers and 911 operators are subject to § 41-4-12, as are police officers, there is no waiver of immunity for the alleged negligence." *Id.* According to Defendant, only two types of negligence have been recognized against law enforcement officers. The first involves a supervisory law enforcement officer's negligent hiring, training, and/or supervision of a subordinate officer which proximately causes the subordinate to commit one of the statutorily enumerated intentional torts listed in Section 41-4-12. The second, states Defendant, is where a law enforcement officer's own act of negligence proximately causes a third party to commit an enumerated intentional tort. *See* Doc. 8 at 11 (citing, *e.g.*, *Lessen v. City of Albuquerque*, 2008-NMCA-085, 187 P.3d 179).

---

[9] Defendant DPS and the MVRDA Defendants initially argued that 911 operators are also immune from liability under the New Mexico Enhanced 911 Act. Doc. 8 at 10; Doc. 49 at 8. This Court certified the question of the applicability of the Enhanced 911 Act to 911 operators to the New Mexico Supreme Court, Doc. 69, and the Supreme Court issued an order interpreting the Enhanced 911 Act. Doc. 94. The Supreme Court explained that:

> the immunity provision set out in Section 63-9D-10 of the Enhanced 911 Act has no bearing on the 911 dispatchers' immunity from liability for the allegedly mishandled 911 emergency medical calls; instead, the immunity issue is ultimately governed-one way or the other-by the liability provision of Section 24-10B-8 of the [Enhanced Medical Services Act].

*Ferlic v. Mesilla Valley Reg'l Dispatch Auth.*, 2025-NMSC-028, ¶ 2, 578 P.3d 1051, 1052. Subsequently, Defendant DPS clarified that, in light of the Supreme Court's decision, it would withdraw its arguments regarding the Enhanced 911 Act. *See* Doc. 79 at 3. The Court does not consider immunity under the Enhanced 911 Act in this Order.

Here, according to Defendant, there are no facts alleged by Plaintiffs which would constitute the type of negligence for which immunity is waived under the NMTCA for the 911 operators, call-takers, and dispatchers.

Plaintiffs respond that whether these employees are law enforcement officers is a mixed question of fact and law and thus it would be inappropriate to dismiss the claims against them on a Rule 12(b)(6) motion to dismiss. Doc. 17 at 16. In support of their argument, Plaintiffs cite to *Thompson v. Torrance County Bd. of Commissioners*, a 2011 unpublished decision from the New Mexico Court of Appeals, which held that whether County and New Mexico State Police dispatchers were law enforcement officers pursuant to the NMTCA was a question of both law and fact which was not appropriate for resolution in a Rule 1-012(B)(6) motion. 2011 N.M. App. Unpubl. LEXIS 352, *8. Plaintiffs also argue that their claim under Section 41-4-12 should not be dismissed because in their First Amended Complaint they sufficiently allege that the DPS operators and dispatchers breached their duties which resulted in the preventable death of Isaac. Doc. 17 at 18.

The Court recognizes that, under New Mexico law, whether any given public employee is a "law enforcement officer" as defined by the NMTCA is a mixed question of law and fact. *See Baptiste*, 1993-NMCA-017, ¶¶ 9-10; *see also Thompson*, 2011 N.M. App. Unpubl. LEXIS 352, *8. But, under federal pleading standards, there must be stated allegations in a party's pleadings, known circumstances, or some other information from which the Court can conclude that it is plausible a public employee could be considered a law enforcement officer under the NMTCA. *See Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quoting *Iqbal*, 556 U.S. at 678)).

After carefully reviewing the pleadings, the parties' briefs, and the applicable law, the Court agrees with Defendant DPS that Plaintiffs' First Amended Complaint does not state any facts, either directly or that can be reasonably inferred, which indicate that it is plausible the DPS 911 operators, call-takers or dispatchers are "law enforcement officers," other than simply referring to them as such. While the Court has endeavored to draw all reasonable inferences in their favor, Plaintiffs' Complaint does not "nudge the claim [against DPS] across the line from conceivable or speculative to plausible," when there are no facts to support the contention that either of the definitions of law enforcement officers provided in the NMTCA fit the defendants here. *Brown*, 124 F.4th at 1263 (quoting *Brooks*, 985 F.3d at 1281).

There are no allegations in Plaintiffs' First Amended Complaint, for instance, that the principal duties of DPS 911 operators, call-takers and dispatchers include holding in custody any person accused of a criminal offense, maintaining public order or making arrests for crimes. *See* N.M. STAT. ANN. § 41-4-3(D); Doc. 1-1, *passim*. Nor is there any allegation in the amended complaint that these individuals are "vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime," N.M. STAT. ANN. § 41-4-12, or even that these individuals perform duties that have traditionally been those performed by a law enforcement officer. *See Limacher*, 2008-NMCA-163, ¶ 15. This requirement that some form of factual allegation must be made regarding the duties of public employees who are alleged to be law enforcement officers is not one limited to federal cases, but one also prescribed by New Mexico courts. *See Dunn v. McFeeley*, 1999-NMCA-084, ¶ 24, 984 P.2d 760, 766 (Affirming the dismissal of claims brought under Section 41-4-12, explaining that "[t]he complaint does not allege any duties of McFeeley that could be construed as maintaining public order").

Plaintiffs attempt to address the deficiency in their pleading by stating, in their response to the motion to dismiss, that "[t]here is no plausible argument that 911 operators, call takers, and dispatchers are not fulfilling traditional law enforcement functions relating to public order by operating emergency contact services and assembling emergency responders, including law enforcement officers." Doc. 17 at 16. Thus, state Plaintiffs, "[u]nder both [*Leyba v. City of Santa Fe*, 198 F.Supp.3d 1254 (D.N.M. 2016)] and [*Rayos v. State*, 2014-NMCA-103, 336 P.2d 428], there can be no doubt that they are law enforcement officers, as 'informed by a practical, functional approach as to what law enforcement entails today.'" *Id*. (quoting *Rayos*, 2014-NMCA-103, ¶ 9).

There are two problems with Plaintiffs' assertions regarding the alleged law enforcement functions of the DPS employees at issue. First, in both *Leyba* and *Rayos*, the federal district court and the New Mexico Court of Appeals agreed that the term "law enforcement officer" is to be strictly construed and in each case the respective courts rejected arguments that defendants were "law enforcement officers" under the NMTCA. *See Leyba*, 198 F. Supp. 3d at 1260 (holding that County 911 operators/dispatchers were not law enforcement officers within meaning of the NMTCA in part because "any impact of the dispatchers' duties on public order [was] only incidental and is too indirect to satisfy the statutory definition [of law enforcement officer]" (quotation marks and citation omitted)); *Rayos*, 2014 NMCA-103, ¶¶ 8, 26 (explaining that, "our courts have construed this definition [of law enforcement officer] strictly," and holding that state probation and parole officers did not fit the definition of "law enforcement officers"). Second, regardless of the statements regarding the nature of the duties of DPS 911 operators, call-takers and dispatchers asserted in Plaintiffs' response to Defendant DPS's motion, the fact remains that these statements are not in Plaintiffs' First Amended Complaint and the Court is required to constrain its review to only the four corners of that pleading. *See Mobley*, 40 F.3d at 340; *see also*

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) ("As a general rule, a court considering a motion to dismiss must focus only on the allegations in the pleadings. This does not include plaintiffs' responses to a motion to dismiss." (quotation marks omitted)); *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 435–36 (E.D. Pa. 2018) ("In determining whether to grant Group 1 Defendants' motions to dismiss, the Court must ordinarily consider only those facts alleged in the complaints, accepting the allegations as true and drawing all logical inferences in favor of the non-moving parties.").

Because Plaintiffs have not alleged any facts in their Amended Complaint from which the Court could reasonably infer that the DPS 911 dispatchers and operators are law enforcement officers as defined by the NMTCA, Plaintiffs have not stated a claim for a waiver of immunity for these public employees under Section 41-4-12 of the statute. Defendant DPS does not challenge the claim brought against it under Section 41-4-12 based on the actions of New Mexico State Police Officers,[10] therefore that claim survives dismissal.

**2. <u>The County Defendants and the MVRDA Defendants</u>**

For virtually the same reasons as those related to the 911 operators, call-takers, and dispatchers employed by Defendant DPS, and after carefully reviewing the pleadings, the parties' briefs, and the applicable law, the Court also agrees with the County Defendants and the MVRDA Defendants that Plaintiffs have failed to state sufficient facts, either directly or that can be inferred, which indicate that it is plausible County Defendants Arturo Herrera and Adrian Herrera or MVRDA Defendants Daniel Gutierrez, David Woodward and Quinn Patterson are "law

---

[10] The New Mexico Department of Public Safety is composed of eight divisions, including the New Mexico State Police Division. The New Mexico State Police operate directly under the oversight of the NMDPS. *See* https://www.nm.gov/departments-and-agencies/department-of-public-safety/.

enforcement officers" for purposes of Section 41-4-12, other than simply identifying them in that manner.

As to Defendants Arturo Herrera and Adrian Herrera, Plaintiffs cite to several paragraphs of their Amended Complaint which allege that both these public employees breached their duty of care and negligently and recklessly acted or failed to act and thus caused Isaac Brealey-Rood's death and/or his loss of chance for a better outcome. Doc. 18 at ¶¶ 176-182. But in their Amended Complaint Plaintiffs say nothing about the principal duties of the Herrera Defendants or whether they are vested by law with the power to make arrests, maintain public order, or hold people in custody. Doc. 1-1. Plaintiffs further confuse the issue, describing the Herrera Defendants as "law enforcement officers" for the purpose of Section 41-4-12, but then identifying both as "Fire Prevention Specialists," without explaining the discrepancy or providing any facts from which the Court could infer that it may be plausible that these defendants could be considered "law enforcement officers" or that their duties may plausibly be of a "law enforcement nature." *Leyba,* 198 F. Supp. 3d at 1259.

Plaintiffs fare no better with similar claims against the MVRDA dispatchers and call-takers, Defendants Gutierrez, Woodard, and Patterson. Again, while the Amended Complaint refers to these public employees as "law enforcement officers," as well as "emergency medical dispatchers," *id.* ¶ 14, and "Dispatchers/Operators/Call Takers," *id*. ¶ 16, the pleading is devoid of any facts which would indicate, or from which the Court could reasonably infer, that these employees of the MVRDA are in fact "law enforcement officers" for the purposes of the waiver found in Section 41-4-12 of the NMTCA. There is no mention of these defendants' primary duties, nothing regarding what powers they have been vested by law, or whether they can make arrests, hold people in custody, or maintain public order.

The Court therefore determines that Plaintiffs have not stated a claim for a waiver of immunity under Section 41-4-12 of the NMTCA as to the County Defendants or the MVRDA Defendants. As a result, any claims of negligence brought by Plaintiffs against these defendants pursuant to that provision's waiver of immunity will be dismissed.

**B. Claims Brought Under Section 41-4-5 of the NMTCA**

Plaintiffs also bring claims against Defendant DPS and the County Defendants under the waiver of immunity found in Section 41-4-5 of the NMTCA. Doc. 8 at 6. Section 41-4-5 waives immunity for "bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle, aircraft or watercraft." N.M. STAT. ANN. § 41-4-5.

**1. <u>Defendant DPS</u>**

Defendant DPS argues that Plaintiffs have not sufficiently alleged a claim under this waiver of immunity. In their Complaint, Plaintiffs allege that a New Mexico State Police Officer and two New Mexico State Police "units" arrived at the parking lot at the head of the trail where the decedent and his family had been hiking. Doc. 1-1, ¶ 119. In their response to Defendant DPS' motion, Plaintiffs argue that this allegation is sufficient to state a claim for waiver of immunity under Section 41-4-5 because these DPS employees "arrived by way of motor vehicles to the parking lot" and "failed to assist Isaac, resulting in his death." Doc. 17 at 8.

The Court agrees with Defendant DPS that Plaintiffs have failed to state a plausible claim of waiver under Section 41-4-5 because they have not alleged facts to show that Isaac's death was caused by DPS employees "while acting within the scope of their duties in the operation or maintenance of any motor vehicle." Section 41-4-5. Nowhere in their Complaint do Plaintiffs allege or state any facts that would show or infer negligence on the part of these DPS personnel in

the "manipulation of a vehicle's controls," the "personal act in working the mechanism of [a] car," or "directing and controlling the car as a driver." *See Chee Owens v. Leavitts Freight Serv., Inc.*, 1987-NMCA-037, ¶ 9, 745 P.2d 1165 (citations omitted). The bare allegation that DPS employees arrived at the scene, even if it can be inferred that they arrived by motor vehicle, is not sufficient to plausibly suggest such a waiver.

**2. <u>The County Defendants</u>**

For the same reasons, the Court also finds that Plaintiffs' Section 41-4-5 claims against the County Defendants cannot survive dismissal. Like their allegations against Defendant DPS, Plaintiffs have not pled a plausible claim that any County Defendant negligently operated a vehicle. Doc. 10 at 9. Plaintiffs argue they have stated a claim for waiver of immunity under Section 41-4-5 because they allege that, on the day of Isaac's death, numerous emergency responders gathered casually in the trailhead parking lot in their units, including Doña Ana County Fire Prevention Specialists Arturo Herrera and Adrian Herrera. *See* Doc. 18 at 14. Plaintiffs' allegations are again insufficient to state a claim brought under Section 41-4-5's waiver of immunity for negligent operation of a motor vehicle. The fact that these defendants may have been operating motor vehicles or used motor vehicles to travel to the trailhead parking lot does not state a claim under Section 41-4-5's waiver of immunity absent any allegation of negligence in the operation of these vehicles. To read the statute as broadly as Plaintiffs suggest would result in a waiver of immunity almost any time public employees use motor vehicles to travel, and there is no indication that this is what the state legislature intended when enacting Section 41-4-5.

Therefore, the Court will dismiss the claims brought against DPS and the County Defendants pursuant to the waiver of immunity under Section 41-4-5 of the NMTCA.

**C. Claims Brought Under Section 41-4-6 of the NMTCA**

Plaintiffs bring claims against Defendant DPS, the County Defendants, and the MVRDA Defendants under the waiver of immunity found in Section 41-4-6 of the NMTCA, which waives immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M. STAT. ANN., § 41-4-6 (2007).

**1. <u>Defendant DPS</u>**

Defendant DPS argues Plaintiffs have not sufficiently alleged a waiver of immunity under Section 41-4-6, asserting that, although Plaintiffs allege certain "equipment" was used by the DPS dispatchers, call-takers, and operators during the incident at issue, the mere use of such equipment does not constitute "negligence . . . in the operation or maintenance of . . . machinery [or] equipment." Doc. 8 at 7. In support of its argument, Defendant relies on *Leyba*, 198 F.Supp.3d at 1254 and *Espinoza v. Town of Taos*, 1995-NMCA-070, 905 P. 2d 718, two cases addressing waiver of immunity under the applicable provision of the NMTCA.

The Court disagrees that Plaintiffs have not stated a claim against Defendant DPS under Section 41-4-6. Despite Defendant's assertion to the contrary, Plaintiff has alleged much more than the mere use of equipment by DPS. Plaintiffs allege, for instance, several facts regarding the alleged negligence of DPS employees while operating emergency equipment, including Computer Operated Dispatch systems, radios, and cell phones. Plaintiffs explain that, "Computer Aided Dispatch (CAD) Systems are utilized by … NMDPS, call takers and 911 operators to prioritize and record incident calls, identify the status and location of responders in the field, and effectively dispatch responder personnel." Doc. 1-1, ¶ 32. They further allege that "[e]mergency responders,

including responders employed by … New Mexico State Police … can receive messages initiated by MRVDA's CAD system via their mobile data terminals (MDTs), radios, and work-provided cell phones." *Id.* ¶ 33. In addition, "MRVDA's CAD System does not have constant interface with NMDPS's CAD System, but MRVDA and NMDPS are able to send information and calls over interoperability radio channels and phone lines." *Id.* ¶ 35. They allege "NMDPS' CAD Systems created CAD Response Reports and audio files of dispatch and emergency responder communications for the July 7, 2020 incident." *Id.* ¶ 39. Significantly, Plaintiffs allege Carissa Brealey, Isaac's mother, informed MRVDA that they were "about maybe three quarters of a mile from the trailhead," *Id.* ¶ 85, yet the NMDPS Computer Aided Dispatch Report incorrectly noted Isaac's location as three and a quarter (3 ¼) miles northbound of the trailhead, instead of the three quarters (¾) of a mile from a trailhead where they were located. *See id.* ¶ 110.

Although Defendant takes the position that this "erroneous datum in a report" was not necessarily negligent, a reasonable inference can be made that these errors likely would not have occurred absent negligence in the operation of equipment on the part of DPS and MVRDA personnel who utilized the CAD systems, radios, and other communication equipment on the day in question. Taken together, Plaintiffs' allegations are sufficient to state a plausible claim against Defendant DPS for a waiver of immunity under Section 41-4-6, a statutory provision which has been interpreted broadly by the courts. *See Upton v. Clovis Mun. Sch. Dist.,* 2006-NMSC-040, ¶ 9, 141 P.3d 1259, 1261; *see also Murphy v. Taos Cnty. Bd. of Cnty. Comm'rs*, No. 1:24-CV-00963-DHU-LF, 2026 WL 884706, at *7.

The Court finds the decisions in *Leyba v. City of Santa Fe* and *Espinoza v. Town of Taos*, unavailing at this stage of the litigation. Unlike the instant matter before the Court, *Leyba* involved a post-discovery summary judgment motion, where the court was tasked with determining whether

the non-moving party had presented sufficient evidence in response to a Rule 56 motion to show genuine issues of disputed fact remaining regarding the alleged negligent operation of equipment by the defendants in that case. The court ultimately found that the plaintiffs had failed to meet their summary judgment burden, in part because the plaintiffs failed, even after discovery, "to specify what building, machinery or equipment was operated negligently." *Leyba*, 198 F. Supp.3d at 1261. Here, Defendant DPS seeks dismissal under Rule 12(b)(6) and, at this point in the case, Plaintiffs need only show that they have stated a plausible claim to relief — which the Court has found to be the case. As to *Espinoza*, the Court finds that decision irrelevant and unhelpful, as it involved allegations of negligent supervision of children at a playground, not the same type of negligent operation of equipment at issue in this case. 1995-NMCA-070, ¶ 6.

**2. <u>The County Defendants and the MVRDA Defendants</u>**

For the same reasons, the Court also finds, at this stage of the litigation, no basis to dismiss the claim brought by Plaintiffs against the County Defendants or the MVRDA Defendants under Section 41-4-6 of the NMTCA. In their motion to dismiss, the County Defendants state only that, "Immunity for negligently made administrative decisions is simply not waived by any provision with the NMTCA." Doc. 10 at 9. What that means, however, is not entirely clear to the Court and is thus insufficient to support the contention that Plaintiffs have failed to state a claim under Section 41-4-6.

The MVRDA Defendants move to dismiss Plaintiffs' Section 41-4-6 claim on the basis that "nowhere do Plaintiffs allege that there were any defects with the MVRDA building, nor with any equipment or machinery within the buildings." Doc. 49 at 5. According to the MVRDA, Section 41-4-6 can properly be characterized as a "premises defect" statute, which places upon the

state a duty to exercise reasonable care to prevent or correct dangerous conditions on public property. *Id.* (citing *Williams v. Cent. Cons. School Dt*., 1998-NMSC-006, 952 P.2d 978).

The Court disagrees with the MVRDA Defendants' reading of the scope of Section 41-4-6. Section 41-4-6 waives immunity for damages caused by the "negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M. STAT. ANN., § 41-4-6 (2007) (emphasis added). Again, the use of the word "or," which is disjunctive, indicates that the state legislature intended the waiver would apply to the negligence of a public employee in the operation or maintenance of, among other possible things, equipment. *Limacher*, 2008-NMCA-163, ¶ 9. There is nothing in the plain language of the statute that restricts the waiver's applicability to only negligence in the operation or maintenance of buildings or premises. Instead, as recently recognized by this Court, the statute plainly provides that the waiver recognized therein applies equally to the operation or maintenance of equipment, an observation consistent with that of the New Mexico Court of Appeals. *See Murphy*, 2026 WL 884706, at *7 (citing *Garner v. Dep't of Corrs*., 1995-NMCA-103, ¶¶ 1, 4, 903 P.2d 858) (determining that an electric wire brush in a state prison paint shop was "equipment" for purposes of 41-4-6 and explaining that although courts had previously referred to Section 41-4-6 as a "premises liability" statute, the presence of the words "machinery" and "equipment" had the "effect of broadening the statute beyond only premises"); *see also McCurry v. City of Farmington*, 1982-NMCA-055, ¶ 14, 643 P.2d 292 (holding that firemen using their trucks and equipment in a training exercise came within the waiver for operation of machinery, equipment, and furnishings).

As to both the MVRDA Defendants and the County Defendants, Plaintiffs' Amended Complaint sufficiently states a claim for negligence in the operation of equipment. The pleading

is replete with factual allegations regarding the negligent operation of communication equipment by both County and MVRDA personnel that, according to Plaintiffs, led to unnecessary delays in providing Isaac immediate medical attention and ultimately his death. Plaintiffs recount, for instance, how Plaintiff Carissa Brealey dialed 911 after her son had become overheated and lost control of his bowels on the Baylor Canyon Pass Trail, a call that was answered by MVRDA call taker, Defendant Gutierrez, and handled by both Defendant Woodward and Patterson. Doc. 1-1 at ¶¶ 80-81. According to Plaintiffs, although one of these MVRDA personnel informed Plaintiff Brealey that they were talking to a dispatcher to obtain a response for Isaac, they negligently failed to advise her that an ambulance had been cancelled almost 20 minutes earlier. *Id*. at ¶¶ 94-96. In fact, Plaintiffs allege that ambulances were twice dispatched to the trailhead by MRVDA, but twice were cancelled by the MVRDA at the direction of a Doña Ana County Fire Prevention Specialist, Defendant Arturo Herrera. *Id.* at ¶¶ 138-140, 176-182. Plaintiffs allege that the delay in obtaining medical attention for Isaac was also due to the MVRDA's negligence in calling Defendant Arturo Herrera in the first instance, whose job function did not include providing emergency medical responses. *Id*. at ¶¶ 141-142, 146.

In addition, Plaintiffs allege that MVRDA's call taker, Defendant Gutierrez, did not adequately convey Isaac's condition to County Defendant Arturo Herrera, not telling him that Isaac was unresponsive, had lost control of his bowels, was no longer sweating, or that he was suffering a possible heat stroke. *Id.* at ¶¶ 147-149. Plaintiffs also allege that MVRDA employee Defendant Patterson also made communications indicating to emergency personnel that they should "hold off" in their attempts to reach Isaac because he was "still on the mountain," although Isaac and Carissa Brealey were only ¾ of a mile from the trailhead. *Id*. at ¶¶ 156-158. Plaintiffs'

Complaint further describes facts showing that the MVRDA Defendants misclassified the incident as a "Search and Rescue," and a "minor medical call." *Id.* at ¶¶ 151-173.

Drawing all reasonable inferences in Plaintiffs' favor, including that the directive to cancel ambulances by Defendant Arturo Herrera and the negligent communications made by the MRVDA personnel were made via equipment such as radios, cell phones, and/or the CAD equipment utilized by these defendants, the Court finds that these allegations are sufficient to state a plausible claim for a waiver of immunity under Section 41-4-6.

For these reasons, the Court will deny the request to dismiss Plaintiffs' claims brought pursuant to the waiver of immunity under Section 41-4-6 of the NMTCA as to Defendant DPS, the County Defendants, and the MVRDA Defendants.

**D. Claim Against Defendant DPS Brought Under Section 41-4-10 of the NMTCA.**

Defendant DPS also states its position that Plaintiffs have not sufficiently alleged a claim against it under Section 41-4-10, which waives immunity for "negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services." N.M. STAT. ANN. § 41-4-10. Defendants assert there are, "no factual allegations in the Complaint to infer that any DPS employee, regardless of his or her licensure status, provided any 'health care services' to Isaac, or that he or she did so negligently." Doc. 8 at 9.

Plaintiffs respond that, under the New Mexico Emergency Medical Services Act ("EMSA"), dispatchers/911 operators can be sued under the NMTCA, noting the statute provides that,

> In any claim for civil damages arising out of the provision of emergency medical services by personnel described in Section 24-10B-5 NMSA 1978, those personnel shall be considered health care providers for purposes of the Tort Claims Act if the claim is against a governmental entity or a public employee as defined by that act.

N.M. STAT. ANN. § 24-10B-8. The Court agrees with Plaintiffs that an "emergency medical dispatcher" is one of the people described in Section 24-10B-5 who could be considered a "health care provider" for purposes of the NMTCA if the claim is against a governmental entity or a public employee. *See* N.M. STAT. ANN. § 24-10B-5. The EMSA further provides that an "emergency medical dispatcher" is "a person who is trained and licensed pursuant to Subsection F of Section 24-10B-4 NMSA 1978 to receive calls for emergency medical assistance, provide pre-arrival medical instructions, dispatch emergency medical assistance and coordinate its response." N.M. STAT. ANN. § 24-10B-3(J).

Here, Plaintiffs allege in their Amended Complaint that "the NMDPS Dispatcher described herein, [was] an 'emergency medical dispatcher[]', as defined in Section 24-10B-3(J), at all material times." Doc. 1-1 at 4. Plaintiffs also allege that part of DPS' negligence was "incorrectly documenting in the NMDPS CAD Response Report that Isaac was located 3 ¼ miles up the trail and not dispatching and/or confirming an ambulance was en route." *Id.* ¶ 191. The Court concludes Plaintiffs' allegations are sufficient to state a plausible claim for waiver of immunity under Section 41-4-10 because, taken as true, they indicate the DPS dispatcher, an emergency medical dispatcher, is considered a health care provider for purposes of the waiver and the DPS dispatcher documented an incorrect location, which affected the provision of medical care to Isaac.

The Court will thus deny Defendant DPS' request to dismiss Plaintiffs' claims brought under that section of the statute.

**E. Claims for Negligent Hiring, Training, and Supervision.**

In their First Amended Complaint, Plaintiffs also assert claims against Defendant DPS, the County Defendants, and the MVRDA Defendants for negligent hiring, training, and supervision. Doc 1-1, ¶¶ 169-175, 183-188, 197-202. The County Defendants and the MVRDA Defendants

move to dismiss these claims against them, both arguing that negligent hiring, supervision, and training can only apply under the waiver of immunity found in Section 41-4-12 and, because the individual defendants from the County and the MVRDA are not law enforcement officers, there is no valid claim against them for this type of negligence. Doc. 10 at 6; Doc. 49 at 7.[11] In addition, defendants argue that the allegations in Plaintiffs' First Amended Complaint are not specific enough to state a claim for negligent hiring, training, and supervision. Doc.10 at 7; Doc. 49 at 8.

Because the Court has found that Plaintiffs have failed to state a plausible claim that the individual defendants from the County and the MVRDA are law enforcement officers within the meaning of Section 41-4-12 of the NMTCA, any claim for negligent hiring, supervision, and training brought against these individuals or their employing public agency under that provision must necessarily fail. However, as stated above, Plaintiffs have sufficiently pled claims for waiver of immunity under Section 41-4-6 as to both the County Defendants and the MVRDA Defendants. The question then becomes whether Plaintiffs have sufficiently pled a claim for negligent hiring, supervision, and training related to that provision of the NMTCA.

For their position that a claim for negligent hiring, supervision, and training is not viable outside the context of law enforcement officers, County Defendants rely on the holdings in *Ortiz v. New Mexico State Police*, 1991-NMCA-031, 814 P.2d 117, *McDermitt v. Corr. Corp. of Am.*,

---

[11] In its motion to dismiss, Defendant DPS refers to "Count VI" of Plaintiffs' First Amended Complaint in the heading of the argument challenging Plaintiffs' claims of negligence but does not provide any substantive or specific argument for dismissal of Plaintiffs' claim for negligent hiring, supervision, and training. Doc. 8 at 6-13. The Court has no obligation to fill in the blanks and make arguments for a party that it does not explicitly make in its briefs. *See Griffith v. El Paso Cnty.*, 129 F.4th 790, 817 (10th Cir. 2025) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 n.1 (10th Cir. 2001)). Therefore, to the extent Defendant DPS's motion is directed at Plaintiffs' claim for negligent hiring, supervision, and training, that motion is denied.

1991-NMCA-034, 814 P.2d 115, 116, and *Monarque v. City of Rio Rancho*, 2012 WL 12949720 (D.N.M. Jan. 23, 2012), all cases involving law enforcement officers and the waiver of immunity under Section 41-4-12 of the NMTCA and each recognizing the viability of claims for negligent supervision and training by supervisory officials of their law enforcement officer subordinates when that negligence leads to the violation of a specified tort or violation of rights. But there is nothing in any of those cases, or any other case cited by the County Defendants or the MVRDA Defendants, where it has been determined that these types of claims are strictly limited to claims brought under any particular waiver provision of the NMTCA. In fact, in a more recent, albeit unpublished case, the New Mexico Court of Appeals recognized that a claim for negligent supervision and training was viable under the waiver provision of Section 41-4-6 where it was alleged that this type of negligence created a potentially dangerous condition at the state penitentiary. *See Enriquez v. New Mexico Dep't of Corrs.*, No. A-1-CA-39033, 2022 WL 17413723, at *3 (N.M. Ct. App. Dec. 5, 2022). Although that case involved the negligent operation or maintenance of a premises, there is nothing in the reasoning or analysis by the New Mexico appellate court that would lead to the conclusion that a claim for negligent supervision or training could not be applicable to a case, like this one, involving the alleged negligent operation of equipment.

Finally, the Court rejects the contention that Plaintiffs have not sufficiently pled this claim. Plaintiffs allege that both the MVRDA and the County knew or should have known that hiring, failing to supervise and /or failing to properly train their employees would create an unreasonable risk of injury to Isaac Brealy-Rood and others using the numerous trails in the area; that each had a duty to implement adequate policies, and to properly hire, train and supervise their employees; that they failed that duty by failing to provide equipment, or proper training in the use of equipment

to their employees; that they failed to adopt and enforce appropriate policies, procedures and protocols; that the failure to properly hire, train, and supervise their employees was a cause of Isaac Brealey-Rood's death and thus these defendants were liable to Plaintiffs for damages. Doc. 1-1 at ¶¶ 169-182; 183-188. The Court finds that, in conjunction with the other facts alleged regarding the alleged negligent operation of equipment, and making all reasonable inferences in Plaintiffs' favor, it is likely that this negligence would not have occurred absent deficiencies in the hiring, training, or supervision of these employees. Plaintiffs have sufficiently pled a plausible claim for negligent hiring, supervision, and training as to both the MVRDA and the County Defendants, and the Court will deny these defendants' request to dismiss these claims at this stage of the case.

**F. Spoliation of Evidence Claims**

Plaintiffs also allege claims for spoliation of evidence against Defendant DPS and the County Defendants. According to Plaintiffs, the County Defendants and Defendant DPS are liable under this claim because law enforcement officers Defendants Arturo and Adrian Herrera and the law enforcement officers employed by Defendant DPS "failed to document their involvement, create incident reports and maintain records of the July 7, 2020 incident." Doc. 1-1, ¶¶ 205, 208. Plaintiffs further allege that "Defendants' spoliation of evidence may disrupt, complicate, or defeat Plaintiffs' ability to prove some or all of their claims in this lawsuit." *Id*. ¶ 211.

Both the County Defendants and Defendant DPS move to dismiss the claim, in part because spoliation of evidence is a tort for which immunity is only waived for law enforcement officers under Section 41-4-12. The Court agrees that Section 41-4-12 is the only provision of the NMTCA that provides a waiver of immunity for the torts of negligent or intentional spoliation of evidence. *See* N.M. STAT. ANN. § 41-4-1 through 4-4-27. Therefore, because the Court has found that the

County Defendants and the 911 operators, call-takers and dispatchers employed by Defendant DPS are not law enforcement officers, there is no waiver for the tort of spoliation of evidence against them and these claims must be dismissed.

As to the law enforcement officers employed by Defendant DPS, DPS argues "that there are two separate reasons why [Plaintiffs' spoliation of evidence claim] fails to plausibly allege a justicable [sic] claim for relief, as a matter of law." Doc. 8 at 14. First, argues Defendant DPS, to state a claim for spoliation of evidence, Plaintiff was required to plead that DPS officers intentionally destroyed, mutilated, or significantly altered potential evidence for the purpose of defeating another person's recovery in a civil action. *Id.* at 14-15 (citing *Coleman v. Eddy Potash, Inc.*, 1995-NMSC-063, ¶ 13, 649, 905 P.2d 185, *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 13, 34 P.3d 1148). Second, asserts the Defendant, until the 2020 amendments to the NMTCA that went into effect on September 20, 2020, there was no waiver of immunity under the NMTCA for spoliation of evidence. *Id.* at 15. Here, the incident forming the basis of this suit occurred on July 8, 2020; therefore, according to Defendant DPS, the amendment that added spoliation of evidence to the waiver of immunity provision in Section 41-4-12 does not apply to this case. *Id.*

The Court finds Defendant DPS' arguments insufficient to warrant dismissal of Plaintiffs' claim for spoliation of evidence at this stage of the litigation. As to Defendant DPS's first argument, the Court notes that Defendant only challenges whether Plaintiffs have alleged a claim for intentional spoliation of evidence, as recognized and defined by the New Mexico Supreme Court in *Coleman*. But the NMTCA also waives immunity for negligent spoliation of evidence by law enforcement officers, N.M. STAT. ANN. § 41-4-12 (2020), and Defendant DPS does not address how or why Plaintiffs have failed to allege such a claim.

The Court similarly rejects Defendant DPS' argument that the September 2020 amendment to Section 41-4-12 does not apply to this case because the death of Isaac Brealey-Rood occurred in July 2020. This position ignores the New Mexico Supreme Court's decision in *Methola v. Cnty. of Eddy*, 1980-NMSC-145, concerning this very issue. In *Methola*, the court recognized that the NMTCA "is a remedial act which applies only prospectively, in the absence of expressed legislative intent to make it retroactive." *Id.* ¶ 14. However, the court nevertheless concluded that "[s]ince the right to sue governmental entities and their officials [is] governed entirely by statute, the applicable statutes are those which were in effect when the suits became pending cases." *Id.* Therefore, the court held that certain amendments to the NMTCA applied to the cases before it, even though the alleged misconduct forming the basis of the suit occurred prior to the amendments, because the lawsuit at issue was filed after the amendments became effective. *Id.*; *see also Mondragon v. Rio Rancho Pub. Schs. Bd. of Educ.*, No. CV 21-427 KK/JMR, 2025 WL 923340, at *5 (D.N.M. Mar. 19, 2025). In this case, although the incident forming the basis of this suit occurred in July 2020, and the amendment to the NMTCA that extended the waiver of immunity under Section 41-4-12 became effective in September 2020, the amended and extended version of 41-4-12 applies because this lawsuit was filed and "became pending" in 2022. *See* Doc. 1-1.

In sum, assuming Plaintiffs claim is one for negligent spoliation of evidence, Defendant DPS has provided no basis to dismiss Plaintiffs' claim against the DPS law enforcement officers brought under Section 41-4-12 of the NMTCA.

**G. Loss of Consortium Claims**

Defendant DPS and the MVRDA Defendants seek dismissal of Plaintiffs' loss of consortium claim, both pointing out that the claim fails because, as stated by Defendant DPS, "in the specific context of the Tort Claims Act, 'loss of consortium' is simply a type of damages, like

lost wages, pain and suffering, emotional distress or medical expenses, rather than a separate, stand-alone claim or cause of action." Doc. 8 at 17; *see also* Doc. 49 at 11. Both defendants recognize that, if there is an underlying tort for which immunity is waived under the NMTCA, an independent claim for loss of consortium can be brought under the statute if there is an underlying tort triggering immunity which causes direct physical injury. Doc. 29 at 8 (citing *Thompson v. City of Albuquerque*, 2017-NMSC-021, 397 P.3d 1279; *Brenneman v. Bd. of Regents*, 2004-NMCA-003, 84 P.3d 685); Doc. 49 at 11.

Here, the Court has concluded Plaintiffs have stated a claim for waivers of immunity under the NMTCA. In *Thompson*, the New Mexico Supreme Court held that plaintiffs may bring a claim for loss of consortium independent of an underlying tort claim. *Thompson*, 2017-NMSC-021 ¶ 9,. The court explained that, "Loss of consortium can be asserted against a New Mexico government actor, despite that it is not specifically mentioned in the New Mexico Tort Claims Act, N.M. Stat. Ann. 41-4-1 to 41-4-30, provided that the underlying tort, the one that caused direct physical injury, itself triggers an immunity waiver." *Id.* ¶ 12. Because, as explained above, Plaintiffs have alleged torts against DPS and the MVRDA that themselves trigger immunity waivers, Defendants' request for dismissal of Plaintiffs' loss of consortium claim will be denied.

**H. The City of Las Cruces' Joinder to Motions to Dismiss**

On October 15, 2025, the City of Las Cruces filed its "Notice of Joinder of Motions Filed," purporting to adopt the legal arguments made by Defendant DPS, the County Defendants, and the MVRDA Defendants. Doc. 107. In its motion, the City provides no legal arguments pertaining to the specific allegations against it made by Plaintiffs in their First Amended Complaint. *See id.* While it is not improper for a party to seek to join in a motion filed by another party, *see* D.N.M. LR-CIV. 7.1(a) (".... A party may adopt by reference another party's motion or other paper by

making specific reference to the filing date and docket number of such motion or other paper"), the Court finds the City's motion insufficient to dismiss any of the claims asserted against it. As evident through the discussion above, the claims brought by the DPS Defendants, the County Defendants, and the MVRDA Defendants are fact specific, and necessitate a careful review of the claims alleged against each to determine whether Plaintiffs have asserted plausible claims for relief against them. Here, to properly consider the issues raised in the City's dispositive motion would require the Court to determine what claims are specific to the City and what facts it would allege fail to establish a plausible claim against it. As noted by the Tenth Circuit Court of Appeals, it is not the duty of the Court "to make arguments for a litigant that he has not made for himself." *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015). Merely stating that it is joining the arguments of the other defendants does not give the Court enough information to rule on the issues that may be raised by the City without constructing legal arguments for it, which is not the Court's role. For this reason, the Court will deny the City's motion to dismiss any of the claims against it.

## IV.
## CONCLUSION

For the foregoing reasons, Defendant DPS'S Motion to Dismiss (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**; Doña Ana County Defendants' Motion to Dismiss (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**; the MVRDA Defendants' Motion to Dismiss (Doc. 49) is **GRANTED IN PART** and **DENIED IN PART,** and the City of Las Cruces' Joinder to Motions to Dismiss (Doc. 107) is **DENIED**.

**IT IS SO ORDERED.**

DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE